**Ex parte Nancy Marie BECK.**

**No. 70169.**

Court of Criminal Appeals of Texas, En Banc.

March 22, 1989.

James H. Kreimeyer, Belton, for appellant.

Arthur C. Eads, Dist. Atty., and Sean K. Proctor, Asst. Dist. Atty., Belton, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is an application for writ of habeas corpus filed pursuant to V.A.C.C.P., Article 11.07, Section 2. Applicant was convicted of voluntary manslaughter after prosecution upon a murder indictment which alleged she caused the death of the complainant by shooting him with "a gun". Upon submission of a special issue, the jury returned a finding that applicant used or exhibited a "deadly weapon" in commission of the offense. Thereafter, the trial judge entered the finding in the judgment of conviction. See V.A.C.C.P., Article 42.01(21).

Applicant now contends she was denied a fair trial by the failure of the indictment to notify her that her use of a deadly weapon would be an issue in the trial. Under *Ex parte Patterson*, 740 S.W.2d 766 (Tex.Cr.App.1987), accused persons are entitled to notice in some form that the use of a deadly weapon will be a fact issue at the time of prosecution, if the State intends to pursue the entry of a deadly weapon finding pursuant to Article 42.01, supra. See also Article 42.12, Section 3g(a)(2), V.A.C. C.P., [formerly Section 3f(a)(2)]; and Section 15(b).

The State argues that it is "totally illogical for the Applicant to contend that an indictment charging her with causing the death of an individual by shooting him with a gun did not notify her that the gun was an object that 'in the manner of its use or intended use is capable of causing death or serious bodily injury.' Texas Penal Code, § 1.07(a)(11)(B)...."

Section 1.07(a)(11)(B), supra, provides: 'Deadly weapon' means:

\*    \*    \*    \*    \*    \*

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

We agree with the State. It is apparent that any allegation which avers a death *was caused* by a named weapon or instrument *necessarily includes* an allegation that the named weapon or instrument was, "in the manner of its use ...capable of causing" (since it *did* cause) death.[1] Thus, applicant had sufficient notice that

---

1. What we say here is no different from reasoning that a person who is charged with capital murder has notice from that charge that he may be found guilty of murder. The latter is necessarily included in the former.

the weapon alleged is a deadly weapon and that her use of a deadly weapon would be an issue in the State's murder prosecution. Thus, the concerns and individual constitutional guarantees elucidated in *Ex parte Patterson* are satisfied.

■ We are aware of the language in *Ex parte Patterson* dealing with the question of notice in the context of the State seeking an affirmative finding of a deadly weapon. As stated in the concurring opinion in *Ex parte Patterson*, the essence of the cases dealing with analagous notice situations, such as *Long v. State*, 36 Tex. 6 (1871), dealing with enhanced punishment for repeat offenders, is the giving of notice of "every circumstance constituting a statutory offense which would affect the degree of punishment ...". We have not required that the notice go further and specifically point out that, in the enhancement situations since *Long*, Subchapter D of Chapter 12 of the Penal Code will be relied on to increase the punishment range to a certain range above that ordinarily prescribed for the indicted crime. We likewise do not deem an analogous requirement necessary in this instance.[2]

■ *Ex parte Patterson* notice, consistent with the rationale in *Long*, remains necessary in cases where there is no allegation of death or serious bodily injury being caused by a weapon, and there is no use of the nomenclature "deadly weapon" in the indictment, but there will be evidence at trial that the defendant used or exhibited a weapon in the commission of the offense. In this instance, where there is no allegation in the indictment which comports with the definition of deadly weapon as set out in § 1.07(a)(11)(B), supra, the defendant is clearly *not* put on notice that there will be an issue in the case concerning use or exhibition of a deadly weapon.

■ At this juncture, it is appropriate to comment on Judge Clinton's concurring opinion which concludes that it is *Polk v. State*, 693 S.W.2d 391 (1985), which is being modified or overruled.[3] Such a notion might lead to some confusion if left unrebutted.

To understand the difference between notice and affirmative finding, it is helpful to mentally compartmentalize the "notice of a deadly weapon issue" apart from the "affirmative finding issue". The concept of notice that there will be a deadly weapon issue in the case is the concern of today's majority opinion and of *Ex parte Patterson*, supra. This notice concept is *totally* divorced from the "affirmative finding of a deadly weapon" body of law that has emerged with the *Polk*, supra, line of cases.

■ Affirmative finding law emerged as a child of Article 42.12 of the Code of Criminal Procedure. It is solely the result of the insertion of the word "affirmative" in that statute, and has no link to any

**2.** The penal laws are fraught with offenses that have a higher penalty range when an additional fact, which is not necessary to prove the *offense,* is pled in the charging instrument. Although the additional fact must be pled in the indictment under the *Long* rationale, the effect of that fact on punishment need not be pled; *see* for e.g., Sec. 31.03(f), V.A.P.C., (offense is increased to the next higher category of offense if it is shown at trial that the actor was a public servant); Sec. 31.12(h), V.A.P.C., (offense is a Class B misdemeanor unless committed for remuneration, in which event it is a Class A misdemeanor); Sec. 4.03—4.041, Art. 4476–15, V.A.C.S., Controlled Substances Act (offense is *aggravated* if amount of substance is 28 grams or more); Sec. 4.042(d), Art. 4476–15, V.A.C.S., Controlled Substances Act (minimum penalty jumps from 5 years' imprisonment and a fine not to exceed $50,000 to 10 years' imprisonment and a fine

not to exceed $100,000 if amount of substance exceeds 400 grams).

**3.** In *Polk*, supra, this Court stated that verdicts will no longer "amount to" or "necessarily imply" an affirmative finding of use or exhibition of a deadly weapon. In doing so, we relied on the clear legislative intent in holding that an *express, not implied,* finding of a deadly weapon be made in Art. 42.12, V.A.C.C.P., "affirmative finding" cases. It is apparent from the tremendous number of appellate cases which present the issue of whether a proper "affirmative finding" was in fact made that the bench and bar have a great deal of difficulty effectuating this *express* finding notion. It is not our place, however, to question the wisdom of a particular requirement of the law as promulgated by our legislature, or to thwart the purpose of such a requirement merely because of its difficulty in practical application.

concept of notice. In fact, nothing in Article 42.12 or in the *Polk* line of cases prohibits an entry of an affirmative finding without prior notice to the accused. An affirmative finding is just that: a finding that is affirmatively made. This can be accomplished by: (1) A jury's answer to a special issue, or (2) by a finding of "guilty as charged in the indictment". In the latter case, the indictment must also contain an averment of a deadly weapon, or a named deadly weapon per se.

Notice that there will be a deadly weapon issue in the case *happens* to be given, under our holding today, in the above latter case (i.e. when the indictment contains an averment of deadly weapon or a named deadly weapon per se). But the fact that common wording concerning a deadly weapon in the indictment may satisfy the affirmative finding requirement of *Polk* and also satisfy the notice requirement of today's holding in no way merges the two separate and distinct bodies of law.

■ In sum, in the case at bar, the averment in the indictment [causing the death of the complainant by shooting him with a gun] gave appellant notice that the State would attempt to prove that the named gun was used in a manner that caused death and therefore was a deadly weapon. The notice requirement espoused in *Patterson*, as modified today, is therefore satisfied. By contrast, had the jury not answered a special issue that the gun was a deadly weapon, there would have been no *affirmative* finding of deadly weapon made, even upon the return of a verdict of "guilty as charged in the indictment". *Polk*, supra. But since a special issue was so answered, the affirmative finding was properly entered, and appellant does not challenge the entry of an affirmative finding on that ground.

In conclusion, since the applicant here was clearly given notice that the nature of the weapon alleged in the indictment was an issue necessary to litigate in her trial, we deem her to have been given sufficient notice that fact would potentially be used under Article 42.01, supra., or Article 42.12, Section 3g(a)(2), supra. Language in *Ex parte Patterson* is overruled to the extent of conflict with this holding.

The relief requested is denied.

CLINTON, Judge, concurring.

I feel compelled to comment in defense of the much maligned, and I fear, little understood opinion of the Court in *Ex parte Patterson*, 740 S.W.2d 766 (Tex.Cr. App.1987).

First, it is *Polk v. State*, 693 S.W.2d 391 (Tex.Cr.App.1985), which I believe the Court is qualifying today, at least as much as *Patterson*, albeit *sub silentio*.

In *Polk*, supra, the Court rejected a string of cases which had held that a jury verdict of "guilty as charged in" an indictment, alleging that death or serious bodily injury resulted from use of a weapon, "necessarily included" an affirmative finding that a deadly weapon was used. Thus were overruled, *inter alia, Ex parte Moser*, 602 S.W.2d 530, 533 (Tex.Cr.App.1980) ("The only theory of guilt submitted in the court's charge was that the applicant intentionally or knowingly caused the death of the individual by shooting him with a pistol. The jury found the applicant 'guilty of murder as charged in the indictment.' In these circumstances, the verdict necessarily included a finding that the applicant committed murder by shooting the individual with a pistol. Therefore this verdict must amount to an affirmative finding that the applicant used a firearm in the commission of the offense."); and *Chavez v. State*, 657 S.W.2d 146, 147 (Tex.Cr.App.1983) ("[I]n the present case, the indictment alleges '[defendant caused the death of the deceased by] ... shooting him with a gun.' We hold that this allegation charges murder under V.T.C.A. Penal Code, § 19.02(a)(2) *and charges the use of a deadly weapon.*" (Emphasis added.)). If an allegation that a weapon was used, and that use of that weapon resulted in death, is not such that a jury verdict thereon would "amount to" an affirmative finding, though a verdict upon an indictment alleging a deadly weapon *per se*, or which expressly labels the weapon used as "deadly," *would*, it can only be because the for-

mer allegation does not constitute a sufficient pleading so that we may know the issue has even been litigated. In other words, our holding in *Polk* necessarily rejected the conclusion in *Chavez, supra,* that an indictment such as the one in the instant case actually "charges the use of a deadly weapon." Otherwise, a jury finding of guilt "as alleged in the indictment" would constitute an affirmative finding in this context as well.

Accordingly, in *Ex parte Patterson, supra,* in which death was allegedly caused "with a knife," we observed:

> "Applicant's jury found him guilty of murder 'as charged in Count 2 of the indictment.' But in Polk itself we expressly rejected the notion, to be found in, e.g., *Chavez v. State,* [supra], that an 'affirmative' finding could be derived by 'necessary implication' from a jury verdict of 'guilty as charged' in an indictment pleading facts such as these. That such an indictment will not support an affirmative finding must also mean it does not serve to provide notice that the nature of the weapon will be, in and of itself, a specific issue in the case."

*Id.,* at 777, n. 12. How can it possibly mean anything else?

Without delving into rationale, the holding of *Ex parte Patterson, supra,* is simply this: In any situation in which, under our opinion in *Polk, supra,* a jury verdict of "guilty as alleged in the indictment" would *not* "amount to" an affirmative finding of use of a deadly weapon, such that submission of a special issue on that question would be necessary to authorize entry of an affirmative finding on the judgment,

some kind of pleading is required by due course of law. Otherwise, submission of the special issue to the factfinder (or worse, entry on the judgment of the affirmative finding, where punishment is to the court), will be the first formal notice to the accused that the issue was even of consequence in the litigation—after the fact.[1]

To the extent that it backs away from this holding today, the majority has concomitantly rejected its holding in *Polk, supra,* although not admitting as much. The majority apparently concludes that notice will be found sufficient anytime an indictment contains language "which comports" with the definition of deadly weapon in V.T.C.A. Penal Code, § 1.07(a)(11)(B). I cannot fathom how that can be so when a verdict premised upon that same indictment does not necessarily "amount to" an affirmative finding, under *Polk.* I must conclude, therefore, that insofar as *Polk* overruled *Moser* and *Chavez,* both supra, *Polk* is now, in turn, overruled. If this is not the true tenor of the majority opinion, then I fear what was once perceived to be a legal "quagmire" with respect to whether an affirmative finding has been *made,* 693 S.W.2d at 396, may be transmogrified into a veritable morass with respect to whether an affirmative finding has been *pled.*

Second, the majority believes it necessary to observe that "the effect" of an affirmative finding of use or exhibition of a deadly weapon is not a part of the pleading which *Patterson* requires. I agree entirely with this observation, but would not think it necessary.[2] To the extent the opinions

---

1. Thus we exclaimed in *Patterson:*
   "At least where the indictment *fails* to allege that a weapon was used or exhibited which is alleged to be, or is *per se,* a deadly weapon, ... *the accused has no way of knowing that such a finding may even be made until the special issue required in these circumstances by Polk,* supra, has been submitted to the jury, or the trial court, acting as factfinder, see *Ex Parte Webster,* 704 S.W.2d 327 (Tex.Cr.App. 1986), enters the affirmative finding in the judgment!"
   740 S.W.2d at 774. (All emphasis is mine throughout unless otherwise noted.)

2. At the outset the *Patterson* court identified the issue as "a question expressly left open in *Polk v. State,* [supra], *viz:* what notice, if any, must appear in an indictment *to support submission of a special issue* to the jury as to whether a deadly weapon was used or exhibited during the commission of the alleged offense." *Id.,* at 767. The facts were that the indictment did not allege the knife used was a deadly weapon and a knife is not a deadly weapon *per se,* but the trial court *submitted a special issue* to the jury inquiring whether it was a deadly weapon. Defendant asserted on appeal that due process and due course of law require "notice" in the indictment that the State intends to obtain such an affirmative finding *"by way of a special issue submitted*

today serve to clarify a misunderstanding of the opinions in *Patterson* on this score, I welcome it.

With these comments I join the judgment of the Court.

CAMPBELL, J., joins in this opinion.

TEAGUE, Judge, dissenting.

The majority opinion treats the contention presented by Nancy Marie Beck, henceforth applicant, as though it was before this Court either on direct appeal or was being presented to this Court through the petition for discretionary review process. However, applicant presents her contention pursuant to Art. 11.07, V.A.C.C.P., this State's postconviction habeas corpus statute, which is invoked when a defendant claims that he was deprived of a fair and impartial trial, or has been deprived of some Federal or State Constitutional right to which he should have received. *Given the record of this cause*, I do not believe that applicant's contention is a fit and proper subject for this Court to review under its postconviction habeas corpus jurisdiction.

Therefore, I respectfully file this dissenting opinion to the majority's decision to consider applicant's contention that the affirmative finding that a deadly weapon was used or exhibited when she committed the offense of voluntary manslaughter should be deleted from the trial court's judgment because she was not given sufficient notice in the trial court that this was going to occur. I also find that applicant was given sufficient notice, although it is not the kind

of notice that I might prefer that a defendant should be given. However, I find that the kind of notice that applicant was given is sufficient to satisfy either the due course of law clause of this State's Constitution or the due process of law clause found in the Fourteenth Amendment to the Federal Constitution, and further find that the lack of such notice about which applicant complains did not deprive her of a fair and impartial trial.

Applicant argues that the affirmative finding that was entered in the trial court's judgment should be deleted from the trial court's judgment for the following reasons: (1) "The State did not plead in the indictment that the applicant used or exhibited a deadly weapon in the commission of the offense", and (2) "The State did not file any special plea that would give the applicant notice that the State intended to seek an affirmative finding."

The record reflects that applicant was convicted by a jury of committing the offense of voluntary manslaughter. The jury also assessed her punishment at ten years' confinement in the Department of Corrections. Thereafter, while represented by the same attorney who represented her at trial, she appealed her cause to the Third Court of Appeals. She did not raise on direct appeal the contention that she raises in this cause. See the Third Court of Appeals' unpublished opinion of *Beck v. State*, No. 3–84–252–CR, May 22, 1985. Nor did she, through the same attorney who continued to represent her, present the conten-

---

to the jury." *Ibid.* The Court ultimately found that in those particular circumstances an accused is entitled to notice, and the State must plead it, but not necessarily in the indictment. *Id.*, at 775–776.

Although in answering the question initially posed we concentrated on the requirement for notice that the State must plead, certain language in the *Patterson* opinions is said to induce some concern about *content* of that notice. Yet in note 9, at 775, the opinion of the Court contrasted those situations where "the *properly pled* allegations of a primary offense, together with *allegations of prior offenses*, if any, will provide sufficient information from which range of punishment can accurately be gauged, [and] the indictment *alleging an offense* under terms of V.T.C.A. Penal Code, § 19.03, [will] *put*

the accused on notice* that his punishment will invariably be assessed according to the answers given to Article 37.071 special issues," with the situation in *Patterson, viz;*

"... [F]rom an indictment neither expressly alleging a deadly weapon was used or exhibited, nor alleging use or exhibition of what is a deadly weapon *per se*, the accused *cannot be expected to determine* with any degree of certainty *whether a special issue will be submitted* [.]"

*Ergo:* A pleading *pointedly tendering* the issue whether a given thing is a deadly weapon within the meaning of V.T.C.A. Penal Code, 1.07(a)(11), provides notice that, should evidence raise it, the trial court is authorized to submit a special issue to the factfinder.

tion that she raises in this cause in the petition for discretionary review that he filed in this Court on her behalf. The petition was refused on June 4, 1986, and motion for rehearing was denied on November 5, 1986. See *Beck v. State,* Court of Criminal Appeals Number 827–85. Nor does applicant's present and new attorney in this cause allege good cause why her contention was not raised either on direct appeal or in the petition for discretionary review that was refused. See *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

I also do not find where applicant has satisfied this Court's stringent requirements that were laid down in *Ex parte Maldonado,* 688 S.W.2d 114 (Tex.Cr.App. 1985), which holds that if a record of the trial exists, it must be made a part of the postconviction application for the writ of habeas corpus, or the applicant must establish that the error about which he claims occurred at his trial "so infected the trial process as to deny him a fair and impartial trial." (116). The trial court record is not before us, nor does applicant's present counsel assert that the finding deprived her of a fair trial.

Applicant asserts that because her indictment did not allege that the trial judge might later enter in the trial court's judgment the affirmative finding, the finding should be deleted from the trial court's judgment. Although it is true that the indictment is silent that the trial judge might later enter in the judgment the above finding, there is no requirement in our law, not even under *Ex parte Patterson,* 740 S.W.2d 766 (Tex.Cr.App.1987), that the indictment must contain such an allegation. Our law before today's opinion, under *Ex parte Patterson,* was simply that the defendant must be given some notice that the trial judge might later enter in the trial court's judgment such a finding. The record of this cause, however, actually shows that applicant and her attorney received notice, although it is not the kind of notice that I prefer should be given.

The record reflects that during the guilt stage of applicant's trial the trial judge, apparently after giving applicant and her very experienced criminal defense trial attorney, who was also a former very well respected district court judge of this State, who also represented her on direct appeal to the Third Court of Appeals and in the petition for discretionary review proceedings before this Court, the opportunity to complain about his, the trial judge, submitting to the jury the special issue that I have attached to this opinion as "Appendix A." They made no objection to the trial judge submitting the issue to the jury, even though there is no statutory authority that gives a trial judge of this State the authority to submit such an issue to the jury. This makes it obvious to me that applicant and her attorney were well aware of, and thus received notice, that the trial judge might later enter in the trial court's judgment the above finding, or at least they were aware or should have been aware that the trial judge might later invoke the provisions of Art. 42.01, V.A.C.C.P., or Art. 42.-12, § 3g(a)(2), V.A.C.C.P., formerly Sections 3f(a)(2) and 15(b). See and compare *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

In *Polk v. State,* 693 S.W.2d 391 (Tex.Cr. App.1985), *based upon this Court's decision that it was proper for the trial judge to submit a special issue to the jury on the deadly weapon issue,* I concluded in the concurring and dissenting opinion that I filed in that cause that, "If the issue is to be submitted, it should be submitted only at the guilt stage of the trial. The determination by the trier of the facts, whether a deadly weapon was used or exhibited during the commission of the offense by the accused, actually goes to the commission of the offense." (1985). Therefore, *given what occurred in this cause,* I find that during the guilt stage of the trial applicant received sufficient notice that an affirmative finding might later be entered in the trial court's judgment.

Therefore, this Court should dismiss applicant's cause because it was improvidently ordered filed.

Given what I have stated, I believe to write more would merely pile more obiter

dictum on the pile of obiter dictum that the majority has already stacked. Nevertheless, I am compelled to additionally state that I also dissent to the majority opinion's broad and general holding, either express or implied, that if the charging instrument alleges that the accused committed a homicide, and it is also alleged that he did so by or through the use of some solid, gaseous, or liquid substance, and the defendant is found guilty of that offense, or some lesser included offense of that offense, this will be sufficient notice to the accused that the trial judge may later enter in the trial court's judgment an affirmative finding that a deadly weapon was used or exhibited in the commission of the offense for which the accused was convicted, and the defendant need not be given any other kind of notice of this contingency, either formal or informal.

Today, we should praise *Patterson* for the contributions that he made to our criminal justice system during the short period of time that he lived within that system. However, after today's majority opinion, we should also exclaim from the rooftops: "The great and mighty *Patterson* is dead! Praise him but no longer recognize him, for *Beck* killed him and a majority of this Court, after first ordering that he be cremated, buried his ashes! But People, also remember, like the great Phoenix, the great and mighty *Patterson* may someday arise youthfully alive from his ashes to live another day." Also see the dissenting opinion that I filed in *Gilbert v. State*, 769 S.W.2d 535, handed down this date.