Hector CHAVEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–92–00121–CR.

Court of Appeals of Texas,
El Paso.

Aug. 18, 1993.

David C. Hilton, Ignacio Pratti Estrada, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

LARSEN, Justice.

A jury found Hector Chavez guilty on five counts of sexual assault and sentenced him to twenty years' imprisonment and a $5,000 fine for each count. Although indicted for aggravated sexual assaults using a firearm, the jury found him guilty only of the lesser included offenses of sexual assault. At the punishment phase of trial, the jury returned findings that Chavez used a deadly weapon, a knife, during the crimes. The trial court entered judgment reflecting those findings as required by TEX.CODE CRIM.PROC.ANN. art. 42.12, § 3g(a)(2) (Vernon Supp.1993). Chavez appeals.

## FACTS

On February 7, 1991, at 1 a.m., three young women and four children were asleep in their El Paso apartment. The sound of breaking glass abrupted awakened them. Three men, one of whom was Hector Chavez, entered the apartment through the broken kitchen window. Chavez carried a knife as he entered. The other two men carried what the women took to be guns. One of the women made a lunge at the phone in an attempt to summon help, but the intruders cut the line. The three men demanded money, and the women told them where to find all the money in their home: about $60. The women begged them to leave, but the three men then brutally raped them, threatening to injure or kill them and their children if they

did not cooperate. The three men exchanged weapons throughout the episode, and stood guard for each other as the rapes took place. One of the women testified that the three attackers seemed "very crazy, like in a rush," and they seemed under the influence of drugs. The four children witnessed everything that happened that early morning.

Eventually, about 4 a.m. the three men left and the women called the police. A bulletin went out for three suspects, and a patrol car stopped two men walking about six blocks from the apartment. Officers questioned the two, and took them to the apartment where one of the women identified them. (Hector Chavez was not one of these two). The officers returned to where they had first seen the two men, and found a gun on the ground partially obscured by leaves. Eventually, it turned out that the "gun" was actually a cap pistol, and not a firearm at all.

At trial, the State pursued a theory that the second gun (which was never recovered) was not a cap pistol but indeed a firearm as alleged in the indictment. The jury, however, found Chavez guilty only of the lesser included offenses of sexual assault. Thus, at the end of the guilt phase of trial, the jury found that the State had not met its burden of proving beyond a reasonable doubt that Chavez had intentionally and knowingly used and exhibited a deadly weapon, a firearm, in the course of a criminal episode.

The State then announced that, at punishment, it would seek affirmative findings that Chavez had used a deadly weapon, a knife, in the course of committing these crimes. The State followed this with written notice, and the trial court gave the parties a four day continuance before commencing the punishment phase.[1] Defendant filed his special plea of collateral estoppel claiming that the jury's findings on the lesser included offense prevented inquiry into use of a deadly weapon at punishment. The trial court submitted the issues, nonetheless, the jury answered them affirmatively, and the judgment therefore reflects a deadly weapon finding.

## COLLATERAL ESTOPPEL

■ In his first five points of error, Chavez claims that the trial court erred in submitting the deadly weapon inquiries to the jury at the punishment phase of trial, as that issue was precluded by the jury's failure to find Chavez guilty of aggravated sexual assault. Collateral estoppel, the theory upon which Chavez relies, is embodied in the Fifth Amendment guarantee against double jeopardy, and precludes the State from twice litigating an issue of ultimate fact. *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970). We find that collateral estoppel did not apply to the State's actions here, for two reasons.

■ First, collateral estoppel only applies once an issue of fact has been determined by a valid and *final* judgment. *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76; *Ex parte Tarver*, 725 S.W.2d 195, 198 (Tex.Crim.App.1986); *Showery v. State*, 704 S.W.2d 153, 155 (Tex.App.—El Paso 1986, pet. ref'd); *Knorpp v. State*, 645 S.W.2d 892, 896 (Tex.App.—El Paso 1983, no pet.). Here, where the arguably inconsistent findings are contained in the guilt and punishment phases of the same trial, the jury had not reached a final adjudication. The Code of Criminal Procedure provides, to the contrary:

In cases where the matter of punishment is referred to the jury, *the verdict shall not be complete* until the jury has rendered a verdict both on the guilt or innocence of the defendant and the amount of punishment, where the jury finds the defendant guilty. TEX.CODE CRIM.PROC. ANN. art. 37.07, § 3(c) (Vernon 1981). [Emphasis added].

Thus, the situation here does not meet the collateral estoppel finality requirement. Instead, where the jury returned verdicts on guilt and punishment that seem inconsistent on the issue of deadly weapon use, our analysis is restricted to a determination of whether the evidence was legally sufficient to support independently each count upon which conviction is based. *Sauceda v. State*, 739

1. The trial court did not rule upon the adequacy of the State's notice of intent to seek the affirmative finding, and defendant does not raise that issue on appeal.

S.W.2d 375, 376 (Tex.App.—Corpus Christi 1987, pet. ref'd). We interpret this to mean that the two findings at guilt and punishment need not be consistent, so long as there is evidence upon which we can sustain both. In *Sauceda*, a jury convicted defendant of aggravated assault as alleged in the indictment, which specified use of a deadly weapon. On punishment, however, the jury answered "no" to a special issue inquiring about defendant's use of a deadly weapon under Tex. Code Crim.Pro.Ann. art. 42.12, § 3g(a)(2) and art. 42.18, § 8(b). Finding that there was sufficient evidence to sustain both jury answers, though they were inherently inconsistent, the Court affirmed the judgment. *Sauceda*, 739 S.W.2d at 376. This analysis guides our decision here, as well. The jury heard sufficient evidence to support a conviction for sexual assault, as well as sufficient evidence to support a deadly weapon finding on the use of a knife, and we therefore find that one answer could not collaterally estop the other.

Moreover, we do not see any inconsistency, actual or theoretical, in the verdict under the facts here. The State could not prove that Chavez used a firearm; it did prove that he used a knife. Although both were deadly weapons, they obviously required different evidence. The failure of proof on one type of weapon did not influence proof on the other, which brings us to the second reason defendant's collateral estoppel argument fails.

 Collateral estoppel only applies to issues *actually litigated* between the same parties. *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76; *Tarver*, 725 S.W.2d at 198. As the United States Supreme Court framed it in *Ashe*, the approach we take is this:

> [T]he rule of collateral estoppel in criminal cases is not to be applied with the hyper-technical and archaic approach of a 19th century pleading book, but with realism and rationality.... [T]his approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the

defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76.

With this in mind, we conclude that collateral estoppel did not bar the State from seeking a deadly weapon finding based upon Chavez's use of a knife. Obviously, the jury could decide that the State did not prove Chavez was armed with a real gun during these rapes, but this finding did not foreclose the jury finding that Chavez possessed a knife, an issue needing entirely different proof. These were two independent issues and a failure to prove one did not preclude the other.

We overrule Points of Error One through Five.

## INSTRUCTION ON VOLUNTARY INTOXICATION

In Points of Error Six through Ten, defendant claims that the court committed reversible error in denying his request for an instruction on voluntary intoxication as a factor mitigating punishment. We find these points without merit, as paragraph three of the court's charge on punishment clearly sets out:

> Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

We overrule Points of Error Six through Ten.

## SUFFICIENCY OF EVIDENCE ON DIGITAL PENETRATION

 In his Point of Error Eleven, Chavez claims the evidence was insufficient on digital penetration to support his conviction on count four of the indictment, which read:

> [T]hat HECTOR CHAVEZ on or about the 7th day of February, 1991, ... did then and there unlawfully, intentionally and knowingly, by threats of violence directed toward [complainant], cause the penetration of the female sexual organ of [complainant], a person not the spouse of

HECTOR CHAVEZ, by means of the finger of HECTOR CHAVEZ....

In passing on sufficiency of the evidence, we determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). We do not resolve conflicts of fact or assign credibility to witnesses, as it was the function of the trier of fact to accept or reject any, part, or all of any witness's testimony. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Our duty, rather, is to determine only if the explicit and implicit findings of the trier of fact are rational by viewing all the evidence in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421–22. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson*, 819 S.W.2d at 843 quoting *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

Here, the evidence on penetration by Chavez's finger was contained in the direct testimony of the complaining witness:

A: He tried to—to force his penis inside my vagina, but then I covered my vagina with my hands and he thought I was going to grab his penis, but I tried to cover my vagina because I was scared. But then he hit me again and he licked his two fingers and opened my vagina.

. . . . .

Q: When you were on the floor and he put his fingers inside you and then he put his penis inside you. Now, did you give him permission to do that?

A: No.

This testimony provides more than adequate evidence to sustain the conviction for penetration by Chavez's finger. In a recent case analyzing the term "penetration," where digital penetration was less intrusive than here, the Court of Criminal Appeals held:

[I]n common parlance, mere contact with the outside of an object does not amount to a penetration of it. But pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact.... For this reason, we think that the phrase 'penetration of the ... female sexual organ' is fairly susceptible of an understanding which includes the kind of touching proven in this case. *Vernon v. State*, 841 S.W.2d 407, 409–10 (Tex.Crim. App.1992).

Thus, even the complainant's first statement that Chavez wet his fingers and opened her vagina is sufficient to sustain the verdict on penetration under count four of the indictment. We overrule Point of Error Eleven.

## CONCLUSION

Defendant Hector Chavez has shown no error in the trial of this cause. There was sufficient evidence to sustain count four of the indictment. We therefore affirm the judgment of the trial court.

BARAJAS, Justice, concurring.

I concur in the majority's disposition of the collateral estoppel issue in this cause. I therefore write not in disagreement, but to dispel any impression the State might have that I condone or encourage the manner in which it secured its deadly weapon finding against Appellant. The record shows that the State, having failed to secure a conviction for the offense of aggravated sexual assault by use of a firearm as alleged in the indictment, announced that it would seek an affirmative finding at punishment that Appellant used a deadly weapon, a knife, in the course of this sexual assault. The announcement by the State came at the eleventh hour and only after it was alerted by the jury of a defect in the proof of Appellant's weapon of choice.[1]

It is well settled that, although a defendant is entitled to notice that the State will seek a deadly weapon finding, that notice need not appear in the indictment under which the

---

1. The record shows that during its deliberations on guilt/innocence, the jury sent the trial court a note which read in pertinent part as follows:

"Why was the knife not included on the charges as a Deadly Weapon?"

defendant is ultimately tried. *Ex parte Patterson,* 740 S.W.2d 766, 775–76 (Tex.Crim. App.1987). The fact that the notice must be in writing, *Luken v. State,* 780 S.W.2d 264, 266 (Tex.Crim.App.1989), appears to be the *only* firmly-held requirement embodied in this area of the law.[2] For example, the Court of Criminal Appeals has ruled that where the State voluntarily abandoned the portion of the indictment containing the deadly weapon allegation and made no attempt to give the defendant any further written notice, the dismissed portion of the indictment nevertheless gave adequate notice that the State would seek a deadly weapon finding. *Grettenberg v. State,* 790 S.W.2d 613, 614–15 (Tex.Crim.App.1990). Even in instances where the indictment makes no mention of a weapon, the State has been allowed to submit the deadly weapon issue at the conclusion of the guilt/innocence phase. *See e.g. Luken,* 780 S.W.2d at 266. Yet *Ex parte Beck,* 769 S.W.2d 525, 526 (Tex.Crim. App.1989), instructs that the defendant is "entitled to notice in some form that the use of a deadly weapon will be a fact issue *at the time of prosecution ....*" [Emphasis added].

In my view, the State has effectively, though not formally, attempted to amend the charging instrument in the present cause mid-stream after failing to present sufficient evidence to convince the jury that Appellant used a firearm in this assault.[3] Because Appellant's counsel wholly failed to object to the State's attempt to amend its indictment, i.e., change its pleadings, or otherwise assert error in such attempted amendment on appeal, this Court is precluded from reaching this issue. *See Banda v. State,* 768 S.W.2d 294, 296 n. 2 (Tex.Crim.App.1989). In as much as Appellant merely addresses this issue via his collateral estoppel argument, I

reluctantly concur with the majority's disposition.

---

**2.** In *Mixon v. State,* 804 S.W.2d 107, 109–10 (Tex.Crim.App.1991) (Teague, J., dissenting), the Texas Court of Criminal Appeals decried its opinions on deadly weapon findings issued since 1981 as collectively representing a "bowl of spoiled stew."

**3.** Clearly this was not a formal amendment to the indictment. According to *Ward v. State,* 829 S.W.2d 787, 793–95 (Tex.Crim.App.1992), an

amendment to the indictment requires an actual physical interlineation. Moreover, before the State may physically alter the charging instrument, it must first request the trial court's permission via a motion for leave to amend. *Id.* at 793; Tex.Code Crim.Proc.Ann. art. 28.11 (Vernon 1989). The State did none of the above in this cause.