Charlie **FLENTEROY**, Appellant,

v.

The **STATE** of Texas.

No. PD–831–03.

Court of Criminal Appeals of Texas,
En banc.

April 6, 2005.

Nick Duncan, Austin, for Appellant.

Holly E. Taylor, Ass't DA, Matthew
Paul, State's Atty., Austin, for State.

## OPINION

HERVEY, J., delivered the opinion of
the Court in which KELLER, PJ.,
PRICE, WOMACK, KEASLER, and
COCHRAN, JJ., joined.

The controlling issue in this case is
whether a variance between a deadly
weapon allegation in the indictment (a
"screwdriver") and the proof at trial (a
"hard metal-like object") is material. We
decide that this variance is not material.[1]

---

1. The grounds upon which we granted discretionary review in this case state:

   1) To be considered to have provided valid *notice* [emphasis in original], must the description of the object used as a deadly weapon in the indictment precisely match the jury's description of the deadly weapon, or must the indictment merely provide "notice", in some form, that the use of a deadly weapon will be a fact issue at the time of trial?

   2) Where the record shows that the defense was not surprised by the presentation of a deadly weapon issue at the punishment phase of trial, does the jury's choice of the lesser-included offense at guilt/innocence vitiate the timely written deadly weapon

One count of a two-count indictment charged that appellant committed the offense of unauthorized use of the victim's car.[2] The other count of the indictment charged that appellant committed the offense of aggravated robbery by using or exhibiting a deadly weapon (a "screwdriver") in the course of committing theft.[3]

The State, however, presented evidence at trial that appellant used either a knife, or a screwdriver or a "hard metal-like object." Appellant testified at trial and denied that he used any weapon at all. He claimed that he got in the victim's car and drove off when she went inside the convenience store. We set out the evidence from the opinion of the Court of Appeals:

> On November 29, 2001, about 6:00 p.m., appellant escaped from the Austin State Hospital. About the same time, Mona Mahdy retrieved her 1991 Honda Prelude, from a body shop where it had been taken for repairs. Mahdy was driving home when she stopped for gasoline at a Texaco station and convenience store about 6:30 p.m. Mahdy used her credit card at the pump and was putting gas in her car when appellant approached and said, "Give me the keys to your car." Mahdy's right hand was on the gas nozzle and she was holding her coat closed with her left hand. When she dropped her left hand, she felt a knife, an instrument, or a weapon, and immediately raised her left hand. She did not look down. She had not seen anything in appellant's hands when he approached. Mahdy next felt a hard object pressed against her ribs, something she described as dull, not sharp.

Mahdy stated that she felt threatened and was placed in fear of imminent bodily injury and death. As a registered nurse, Mahdy expressed the opinion that the instrument was capable of causing death or serious bodily injury by "stabbing" her. She told appellant that the keys were in the car. Appellant got in and told Mahdy to take the gas nozzle out of the car. She did and appellant drove off in her car. Mahdy testified that her purse was in the car along with thirty dollars, her checkbook, her house keys, and her cellular phone. She immediately reported the incident to the convenience store clerk who called the Austin police. Officer Charles Rohre responded. Subhush Patel, the store clerk, testified that Mahdy told him that someone had taken her car "and put a knife to my neck." Officer Rohre stated that Mahdy told him that the man displayed a "four-inch blade knife" and she could see it clearly.

At approximately 9:00 p.m. the same evening, Rockdale Police Officer Frank Thrower stopped appellant because of defective taillights on the Mahdy vehicle. Appellant gave a false name and had no driver's license. Appellant was taken into custody. The car was towed by a local towing company.

When Mahdy recovered her car from the towing company, she found her thirty dollars missing but most of her other possessions were in the car. On the floor board in front of the passenger seat, Mahdy found a screwdriver. She took the screwdriver to the Austin Po-

---

notice provided by the State in the indictment?
3) Does a "fill in the blank" verdict form, which permits the fact finder to name the deadly weapon used, present a proper affirmative deadly weapon finding?

**2.** *See* Section 31.07, TEX. PEN.CODE.

**3.** The State presented evidence at trial that appellant threatened the victim with some type of weapon while in the course of stealing her car from a convenience store. *See* Section 29.03(a)(2), TEX. PEN.CODE.

lice Department and testified that the screwdriver was consistent with what she felt when she dropped her left hand during the robbery. Mahdy admitted that the screwdriver could have been left in her car at the body shop where the car had been repaired. (Footnote omitted).

Appellant admitted that he had taken Mahdy's car, but claimed that he waited until Mahdy walked to the convenience store, then he got in the car, with its motor already running, and drove off. He denied that he accosted Mahdy. On his way to Rockdale, appellant stopped the car to determine if it contained anything valuable. In his search, appellant observed a screwdriver in the vehicle. (Footnote omitted).

*Flenteroy v. State,* 105 S.W.3d 702, 705–06 (Tex.App.-Austin 2003).

There is some question whether the screwdriver that the victim found in her car was admitted into evidence. *See Flenteroy,* 105 S.W.3d at 706 n. 2 (unable to find "that the screwdriver was introduced into evidence"). A screwdriver is listed in the index to the Exhibits volume (Volume VI) of the reporter's record as State's Exhibit 2. This volume, however, contains a picture of what purports to be State's Exhibit 2 and it is not a screwdriver. Another volume (Volume III) of the reporter's record reflects that the screwdriver that the victim found in her car was admitted into evidence as State's Exhibit 2.

Q. [PROSECUTION]: Ms. Mahdy, when you went to meet with Detective Gay that day do you recall whether or not you took anything with you, anything in particular?

A. Yes. I took the screwdriver.

Q. All right. And what did you do with the screwdriver when you went to meet with Detective Gay?

A. When I found it in the car I had wrapped it in paper towels and I put it in a bag. And I gave it to him because I thought that he would want to see it.

[PROSECUTION]: May, I approach the witness again, Your Honor?

[TRIAL COURT]: You may.

(State's Exhibit No. 2 was marked.)

Q. Ms. Mahdy, I'm tendering to you at this time what is marked for identification purposes as State's Exhibit No. 2. Do you recognize that, ma'am?

A. Yes, I do.

Q. And what is State's Exhibit No.2, ma'am?

A. It's a screwdriver.

(State's Exhibit No. 2 was identified.)

Q. Is State's Exhibit No. 2 the same screwdriver that you found inside your car when you recovered it the Saturday following the robbery?

A. Yes, it is.

Q. And this is the same screwdriver that you returned over to Detective Gay?

A. Yes, it is.

[PROSECUTION]: Your Honor, at this time State will offer State's Exhibit No. 2 into evidence.

(State's Exhibit No. 2 was offered.)

[PROSECUTION]: Let the record reflect, Your Honor, that I'm tendering it to Mr.—Mr. Short. Let the reflect that I forgot his name.

[TRIAL COURT]: Record shall so reflect the first part.

[MR. SHORT]: No objection to State's Exhibit No. 2.

[TRIAL COURT]: State's 2 is admitted.

(State's Exhibit No. 2 was admitted into evidence.)

The trial court submitted jury instructions on the charges of aggravated robbery and unauthorized use of a vehicle. The

aggravated robbery instruction stated that the jury could convict appellant of aggravated robbery if, among other things, it found that appellant "used or exhibited a deadly weapon, to wit: a screwdriver." The aggravated robbery instruction also stated that the jury could not convict appellant of aggravated robbery if it had a reasonable doubt on whether appellant "used or exhibited a deadly weapon." This part of the jury instructions did not mention a "screwdriver." The trial court also submitted a jury instruction on a lesser charge of robbery. *See id.* The robbery instruction stated that the jury could convict appellant of robbery if, among other things, it found that appellant intentionally or knowingly placed the victim in fear of imminent bodily injury or death.[4] During the jury's deliberations, the trial court gave the following response to the jury's question:

I have received your written question that reads as follows:

*In the charge of Aggravated Robbery do we have to find that the deadly weapon used was the screwdriver entered in evidence in order to find that a deadly weapon was used?*

The Court under law is not permitted to answer the question you submitted. You are instructed that you have received all the law and evidence you shall receive in order to reach a verdict in this case.

Please consider this instruction along with those already given you and continue your deliberations.

The jury convicted appellant of robbery and unauthorized use of a motor vehicle. At the punishment phase of trial, the trial court submitted another jury instruction on whether appellant used a deadly weapon during the robbery. *See Flenteroy,* 105

S.W.3d at 707. This instruction left a blank for the jury to specify any deadly weapon it may have found appellant to have used during the robbery. *See id.* The charge also instructed the jury that a deadly weapon was "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." The trial court overruled appellant's objection that this procedure fundamentally violated his federal and state constitutional rights.

[THE DEFENSE]: If on the robbery there's the deadly weapon finding, I have an argument on that.

[TRIAL COURT]: Okay.

[THE DEFENSE]: And in reading over these cases, I don't find any of them where it says once the jury has considered aggravated robbery with a deadly weapon and did not charge on that, that it could be brought back in. And I think that—Let's see.

And I think it was one case that stated that if the weapon was litigated in the trial, which this was, and it was alleged in the indictment—I think that *"Deetzen, (Sic), Versus, State"* in 1989. Then there's another one on Page 8 and 10. *"Guadalupe, (sic), V. State"*—that, you know, if it's going to be in there, I want to make an objection to that charge because fundamentally I think it violates his constitutional rights, both State and Federal.

And I don't think an affirmative finding as far as the weapon has been shown in any of these cases that would deal with the case in point on all fours to this particular trial that we've gone through.

[TRIAL COURT]: Okay.

[THE DEFENSE]: Because in the others it has been—Because in the others it was implied that it was in the indictment

4. *See* Section 29.02(a)(2), Tex. Pen.Code.

that it was deleted or it was a difference in the type of weapon from a gun to a shotgun or deadly weapon to a shotgun and nothing as far as on point to this particular trial that we've had. And I think it would violate his constitutional rights to put it in there.

[TRIAL COURT]: Okay. The issue in the case is that the way the State pled Count One, it gave notice of a deadly weapon—that [appellant] used or exhibited a deadly weapon; to wit, a screwdriver. The proof at trial as it came out was that it might have been a screwdriver. It might have been a knife. It might have been another hard, round object.

And so the question is, did—And of course the jury found [appellant] guilty of the lesser included offense of robbery so it—They clearly rejected a finding that the State had proved beyond a reasonable doubt that the deadly weapon was a screwdriver.

The question is, does Count One give sufficient notice to the Defense under the constitution that on the lesser included charge of robbery the State might seek a finding of a deadly weapon of another type. And the Court is—is persuaded by the *Grettenberg*, (sic), case 790 S.W.2d 613. And also *Ex Parte Beck*, 769 S.W.2d 525, that the State gave sufficient notice—that Count One of the indictment as alleged gave sufficient notice to the Defense that a deadly weapon would be a fact issue in this trial.

I believe the Defense has also stated on the record that they received complete discovery in the case of the State's file as well as the victim's statement. So I haven't heard any suggestion of surprise that relates to the—the deadly weapon allegation.

So based on the evidence, relying on those two cases and the fact that I don't—I haven't heard of surprise here in this trial, I'm going to allow the jury to make a finding whether [appellant] did use or did not use a deadly weapon. They—I've followed Blackwell's charge on that, which—which has a space for the jury to fill in the blank as to what that weapon was. So, you know, they must decide what that weapon was. But they will have that opportunity with regard to the robbery count.

The State has also requested for the jury to be given the option to find a deadly weapon was used or exhibited with regard to Count Two, the unauthorized use of a vehicle. I'm not going to grant that request. I have more of a question about whether the notice is sufficient with regard to that count.

So your objection is noted and overruled. Any other objections to the charge?

The jury found that appellant used a deadly weapon and that it was a "hard metal-like object" which is what the prosecution suggested during its closing jury arguments. *See Flenteroy*, 105 S.W.3d at 707.[5] Recognizing the lack of any case

---

**5.** The prosecution argued to the jury:

So what did he have in his hands? I submit to you he had—as she told you, he had a deadly weapon. He had some sort of a hard object, whether it be a dull knife, a screwdriver, whatever it might have been. He had it stuck up against her ribs. He's demanding the keys to her car. And she's a nurse. She feels it. She knows that whatever it is it's something he can thrust up

into her ribs and he can cause serious bodily injury or death.

So we're going to ask that when you go back and you deliberate upon the punishment that you answer the first verdict form with regard to Count One and that you answer that verdict form in such a manner as to state that [appellant] did use or exhibit a deadly weapon. And then there's a space

law directly addressing the procedure followed by the trial court in this case,[6] the Court of Appeals decided that it was error to submit the deadly weapon charge. *See Flenteroy*, 105 S.W.3d at 710–11 (error to permit a second submission of a deadly weapon issue to the trier of fact where the first submission has been resolved unfavorably to the State, where no further notice is given, and where it is left to the jury to determine both the nature of the instrument or weapon alleged in the original notice and whether it was a deadly weapon as used or exhibited). We exercised our discretionary authority to review this decision.

A couple of things in this case are clear. The State proved beyond a reasonable doubt that appellant used some type of a deadly weapon.[7] And, the State timely informed appellant that it would seek a deadly weapon finding at trial.[8] The issue, therefore, comes down to whether the variance between the named instrument in the indictment (a "screwdriver") and the proof at trial (a "hard metal-like object") was material. *See Flenteroy*, 105 S.W.3d at 710 (noting variance between named instrument in indictment and proof at trial). Where, as here, the evidence is sufficient to support the jury's finding that appellant used a "hard metal-like object" as a deadly

weapon but the State did not prove exactly what it alleged (i.e., a "screwdriver"), the issue is whether the indictment "informed appellant of the charge against him sufficiently to allow him to prepare an adequate defense at trial." *See Gollihar*, 46 S.W.3d at 248.

On this record (where appellant's claim is that he stole the victim's car without using any kind of weapon at all), the indictment's deadly weapon allegation sufficiently allowed appellant to prepare an adequate defense to this allegation. Appellant's defense was not affected by the "screwdriver" allegation. Appellant's defense did not depend on whether any particular type of weapon was used. On the contrary, appellant denied that any weapon was used. The variance between the indictment's allegation of a "screwdriver" and the State's proof at trial of "a hard metal-like object" was, therefore, immaterial. *See Gollihar*, 46 S.W.3d at 246–50 (immaterial variances should be disregarded) and at 258 (variance between indictment's allegation of stolen go-cart's model number and the State's proof at trial of a different model number was immaterial, in part, because the defendant's "defense did not depend upon the model number alleged").

for you to describe it. It says, "Namely," and then it says, "Specify."
And you can—You can put a hard metal object or whatever you think fits the evidence in this case. But she told you based upon the circumstances that whatever it was she believed at the time that it was something that could cause death or seriously [sic] bodily injury. And if it had been nothing more than a pencil, you know that by sticking it in a woman's ribs it could have caused serious bodily injury.

6. *See Flenteroy*, 105 S.W.3d at 710 (case law "did not involve a variance between the ... named [deadly weapon] instrument in the notice, or the proof, or a second litigation of the deadly weapon issue during the same trial, or

the use of a fill-in the blank verdict form permitting the jury to decide if the instrument it named or designated was a deadly weapon within the meaning of the law").

7. *See generally Fuller v. State*, 73 S.W.3d 250 (Tex.Cr.App.2002) (discussing evidentiary sufficiency principles); *Gollihar v. State*, 46 S.W.3d 243 (Tex.Cr.App.2001) (same); *Malik v. State*, 953 S.W.2d 234 (Tex.Cr.App.1997) (same).

8. *See generally Ex parte Brooks*, 847 S.W.2d 247 (Tex.Cr.App.1993) (discussing requirement that State provide a defendant with notice that it will seek a deadly weapon finding).

While this Court may not necessarily condone the unorthodox procedure followed by the trial court, we cannot say that in this particular case and on this particular record that this procedure fundamentally violated appellant's federal and state constitutional rights. The judgment of the Court of Appeals is reversed, and the case is remanded there for further proceedings consistent with this opinion.

MEYERS, J., not participating.

JOHNSON, J., filed a dissenting opinion in which HOLCOMB, J., joined.

JOHNSON, J., dissenting, in which joined by HOLCOMB, J.

Before deliberations on guilt, the state asked the trial court to delete from the aggravated-robbery count the words "to wit: a screwdriver," asserting that they were mere surplusage. The trial court refused the request. During deliberations, the jury sent out a note: "In the charge of Aggravated Robbery do we have to find that the deadly weapon used was the screwdriver entered in evidence in order to find that a deadly weapon was used?" The trial court did not answer the question, but instructed the jury to refer to the charge and to continue deliberating. The jury found appellant guilty of the lesser-included offense of robbery on the first count, TEX. PEN.CODE § 29.02, and guilty as charged of unauthorized use of a vehicle on the second count, TEX. PEN.CODE § 31.07.

At the punishment phase, the state requested and received a second deadly-weapon charge, over defense objection.

The special issue submitted to the jury asked whether a deadly weapon was used and included a fill-in-the-blank form on which the jury was to state what that weapon was. The jury made an affirmative deadly-weapon finding and identified the weapon as "a hard metal-like object."

On appeal, appellant argued that the trial court erred by allowing the jury to make an affirmative deadly-weapon finding after it had rejected the deadly-weapon allegation at the guilt phase when it found him guilty of the lesser-included robbery charge.[1] The court of appeals treated it as a notice issue,[2] distinguishing this case from previous cases dealing with the sufficiency of deadly-weapon notice under article I, section 19, of the Texas Constitution:

> Those cases make clear that the written notice requirement may take different forms. They do not support, however, a second submission of a deadly weapon issue to the trier of fact where the first submission has been resolved unfavorable [sic] to the State, where no further notice is given, and where it is left to the jury to determine both the nature of the instrument or weapon alleged in the original notice and whether it was a deadly weapon as used or exhibited.

*Id.* at 711. In so holding, the court of appeals rejected the state's argument that the indictment alleging use or exhibition of a deadly weapon, specifically a screwdriver, was sufficient to put the defense on notice that the use of a deadly weapon would be a fact issue at both guilt *and punishment.*

1. The only difference between robbery and aggravated robbery applicable under these facts is whether the actor used or exhibited a deadly weapon.

2. "Because of the fundamental nature of one's liberty interest in parole, a defendant is entitled to notice if the state intends to seek a

deadly weapon finding at trial, and the state's failure to give such notice constitutes reversible error." *Mixon v. State,* 781 S.W.2d 345, 346 (Tex.App.-Houston [14th Dist.] 1989), *citing Ex parte Patterson,* 740 S.W.2d 766–77 (Tex.Crim.App.1987).

The only evidence at trial indicating that the object held to the victim's side during the robbery qualified as a "deadly weapon" came from the victim. During the trial, she expressed her opinion that the screwdriver entered into evidence was capable of causing serious bodily injury or death if it had been used to stab her in the ribs. However, she also conceded that the screwdriver could have been left in her car, not by appellant, by someone at the body shop from which she had retrieved her car immediately before encountering appellant. Also according to her trial testimony, Ms. Mahdy never saw the object and felt it only momentarily before withdrawing her hand. She believed at the time of the incident that the object was a dull knife. However, in response to the state's questions, she testified that the object qualified as a deadly weapon whether it was a knife or a screwdriver.

The state argues to this Court that the description of the deadly weapon in the written notice, whether in an indictment or a separate writing, need not be particularly specific in order to meet the notice requirement. *See, e.g., Whatley v. State,* 946 S.W.2d 73, 75 (Tex.Crim.App.1997); *Pena v. State,* 864 S.W.2d 147, 150 (Tex. App.-Waco, 1993); *Mixon v. State,* 781 S.W.2d 345, 346 (Tex.App.-Houston [14th Dist.] 1989). In focusing on the question of how *specific* the notice must be, the state seems to misapprehend the crux of the court of appeals' holding:

> In the instant case, appellant acknowledges that he received proper notice from the indictment in Count I that the State would seek an affirmative finding of the use or exhibition of a deadly weapon, "to wit: a screwdriver." That element of the offense of aggravated robbery as charged was submitted to the jury and rejected when the jury found appellant guilty of the lesser-included offense. Appellant in effect contends that this concluded the State's intention to seek an affirmative finding of a deadly weapon of which he had been given notice. Without further notice, written or otherwise, and without further evidence on the issue, the penalty stage of the trial was conducted. At this point, appellant learned for the first time that the State was asking for a special issue type submission of a different deadly weapon charge, this time allowing the jury to first determine the nature of instrument or weapon used and then to decide if the chosen instrument or weapon was used as a deadly weapon.

*Flenteroy v. State,* 105 S.W.3d 702, 710 (Tex.App.-Austin, 2003).

Contrary to the state's assertions, the court of appeals' holding did not rely on the fact that appellant lacked notice that a use of a deadly weapon would be an issue at trial. Indeed, the proof presented by the state at the guilt/innocence phase was consistent with the notice provided by the indictment, i.e., that appellant used and exhibited a deadly weapon, "to wit: a screwdriver." However, the jury's finding that appellant was guilty only of robbery constituted a rejection of the deadly weapon that was alleged in the indictment.

If the trial court had made a different decision on one of two occasions, the issues in this case would not have arisen. First, if the trial court had granted the state's motion to delete "to wit: a screwdriver" and proceeded on the legally sufficient pleading "used or exhibited a deadly weapon," it is likely that, given the jury's note, appellant would have been found guilty as alleged in the indictment. While the trial court did not err in denying the motion, the denial was a step on the path to this appeal.

Second, the trial court appears to have misread or misinterpreted what he referred to as "Blackwell's charge." This is a common way to refer to the pattern jury instructions contained in 8 Michael J. McCormick *et al.*, Texas Practice: Texas Criminal Forms and Trial Manual (10th ed.1995).[3] The jury instructions are the responsibility of the trial court, and the pattern jury instructions include instructions *to the trial court* as to the proper formulation of a jury charge. In the case of robbery, the pattern charge says,

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, A.B., on or about the _____ day of _____, 19__, in the County of _____, and State of Texas, as alleged in the indictment [*or* information] did then and there obtain [*or* maintain control of] property of C.D., to wit _____ [*specify the property* ] without the effective consent of the said C.D. and with intent to deprive the said C.D. of said property, did then and there intentionally or knowingly [*or* recklessly] cause serious bodily injury to C.D. [*or* E.F.] by _____ [*specify manner and means of committing the act* ],
>
> [*Or* did then and there while in the course of committing theft and with intent to obtain (*or* maintain control of) property of C.D., to wit: _____ (*specify the property* ), without the effective consent of the said C.D. and with intent to deprive the said C.D. of said property, did then and there by using and exhibiting a deadly weapon _____ (*specify the deadly weapon used* ) intentionally or knowingly

threaten or place C.D. (or E.F.) in fear of imminent bodily injury or death....]
8 Michael J. McCormick *et al.*, Texas Practice: Texas Criminal Forms and Trial Manual § 116.02, ¶ VII (10th ed.1995).

In these instructions, "A.B." connotes the defendant, and "C.D." and "E.F." connote complainants. The text in italics delineates choices to be made *by the trial court:* the type of charging instrument, the property, the manner and means, *the deadly weapon.* This pattern charge, which the trial court relied on, clearly requires the trial court to fill in the blanks before the jury receives the charge of the court; the choice of weapon is no more the province of the jury than the choice of type of charging instrument or the manner and means of committing the offense.

In a case with almost identical facts, the El Paso Court of Appeals rejected a collateral estoppel argument when the state was permitted to submit a deadly-weapon charge at the punishment phase after the jury failed to find the defendant guilty of aggravated sexual assault at trial. *Chavez v. State*, 860 S.W.2d 714, 717 (Tex.App.El Paso, 1993). In that case, the indictment alleged aggravated sexual assault using a firearm, but the jury found the defendant guilty only of the lesser-included offense(s) of sexual assault. The state announced at the beginning of the punishment phase that it would be seeking an affirmative finding that the defendant used a knife during the course of the sexual assaults, and it provided to the defendant written notice that specified the weapon used. The trial court also gave the parties a continuance of four days before beginning the punishment phase. *Id.* at 716. The court of appeals held that collateral estop-

---

**3.** *"[E]t al."* is T. Blackwell and B. Blackwell, hence the common name of "Blackwell's charge."

pel did not bar the affirmative deadly-weapon finding at the punishment phase and specifically noted that the trial court did not rule upon, and the defendant did not challenge on appeal, the adequacy of the state's notice of intent to seek the affirmative finding. *Id.*, n. 1. In this case, however, the court of appeals did not base its decision on a theory of collateral estoppel, but rather on the inadequacy of the state's notice of intent to seek a deadly-weapon finding at punishment.

After the jury in this case reached its verdict of guilt of the lesser-included offense of robbery, the state provided no additional notice to appellant that it would seek an affirmative finding during the punishment phase, nor did it specify the weapon it would seek to prove use of. Nor, unlike *Chavez*, did the trial court recess the trial to give the defense time to regroup. As the court of appeals noted, "There was no written notice outside and independent of the indictment alerting appellant of the State's intention to seek an affirmative finding of the use of any deadly weapon other than the screwdriver." *Flenteroy*, 105 S.W.3d at 705. Furthermore, the evidence here, unlike the evidence in *Chavez*, did not limit the choice of weapon and thereby provide indirect notice.[4] Faced with the fill-in-the-blank verdict form which allowed the jury to decide what it thought the deadly weapon was and no evidence that limited the choice of weapon, the defense had no notice of what weapon it would be called upon to defend against and therefore no means of disputing the new deadly-weapon allegation during the punishment phase. As the U.S. Supreme Court held in *Jackson v. Virgi-*

*nia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979):

It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process. These standards no more than reflect a broader premise that has never been doubted in our constitutional system: that a person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend.

The jury's finding in this case, that appellant was guilty only of robbery, effectively answered the question of whether the appellant used a deadly weapon as alleged in the indictment. By allowing the state to resurrect the deadly-weapon question as a special issue at punishment without requiring the state to provide any further notice to the defense of both the intent to seek such a finding and the nature of the weapon and by failing to order a continuance in the face of that failure of notice, the trial court erred. As Justice Barajas noted in his concurrence to *Chavez*,

[i]n my view, the State has effectively, though not formally, attempted to amend the charging instrument in the present cause mid-stream after failing to present sufficient evidence to convince the jury that Appellant used [the charged weapon] in this assault.

*Chavez*, 860 S.W.2d at 718 (Barajas, J., concurring)(internal citations omitted).

I would find that submitting the special issue on the deadly-weapon finding at punishment as a blank to be filled in by the jury was error. The notice of intent to re-seek a deadly-weapon finding was not only late and unbounded, it caused the prior notice, in the indictment, to be made false.

4. Chavez was one of three men who assaulted the victims in their home. He carried a knife, but the knife and the two guns carried by his co-defendants were passed among the three during the attack. When the jury rejected the gun, the evidence supported only one other option: a knife.

Appellant received notice of one weapon, and, after he had won on the issue of that weapon, was subjected, without notice, to a punishment trial on a different, unspecified weapon.

I would hold that lack of notice may be cured by giving sufficient written notice and allowing appellant adequate time to prepare a defense and remand this cause to the trial court for retrial on punishment, after sufficient notice to appellant of any intention by the state to seek an affirmative finding of use of a deadly weapon. Because the Court decides otherwise, I respectfully dissent.