Affirmed and Memorandum Opinion filed November 24, 2004









Affirmed and Memorandum Opinion
filed November 24, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00601-CR

____________

 

ARVIN DEWAYNE LOCKETT, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

___________________________________________________

 

On Appeal from the 212th District Court

Galveston County, Texas

Trial Court Cause No. 02CR1387

___________________________________________________

 

M E M O R A N D U M   O P I N I O N

Appellant Arvin DeWayne Lockett asserts that
the evidence is legally insufficient to support his conviction for aggravated
robbery.  We affirm.

I.  Factual and
Procedural Background








On June 15, 2002, appellant
visited Pete James at the home of James=s
girlfriend, Latoya Cooper.  Appellant
asked James to help him rob a Sonic restaurant in League City.  Because James previously had worked at that
Sonic, appellant asked James details about when and how the establishment
closed.  At approximately 11:00 that
night, appellant returned to Cooper=s home to
pick up James.  Cooper testified James
took a stocking cap with him, but she did not see him carry anything else.

Shortly after midnight, Andy
Vidal, the manager of a Sonic restaurant in League City, was counting money for
the night=s deposit.  The restaurant was closed.  A man approached Vidal from behind, placed a
gun on his neck and told him to Ashut up
and give him the money.@  Vidal gave the gunman the money from the
night=s deposit
and also gave him the money in the restaurant=s safe.  Vidal later identified the gunman as Pete
James, who previously had worked at the restaurant.  Lisa Lofaro, another Sonic employee, called
the police and reported the robbery.  








Officer Carl Stoddard of the
League City Police Department received a dispatch to respond to the
robbery.  While en route to the Sonic
restaurant, he observed a car being driven by a person fitting the thief=s
description.  Officer Stoddard turned and
followed the car and requested two other police officers to follow in their
vehicles.  All four cars, including the
suspect car, stopped at a traffic light, which had turned red.  When the signal changed, Officer Stoddard
turned on his emergency lights and siren and attempted a traffic stop.  The driver of the suspect car proceeded to
the shoulder of the road, but continued driving.  The suspect car continued on the shoulder of
FM 270 until it reached FM 646.  Officer
Stoddard advised dispatch that the three officers were involved in a
pursuit.  The suspect car continued to
travel on FM 646 until it reached Ohio Street and then turned left.  Officer Stoddard and the two other pursuing
officers began to discuss on their radios how they would be able to stop the
fleeing car.  At that time another
officer was dispatched to obtain spikes to deflate the suspect car=s tires
so it could be stopped.  After a chase
that went on for two to three miles, the suspect car slowed, and Pete James
fell out of the passenger-side door. 
Officer Stoddard chased James on foot and apprehended him after using
pepper spray.  Other officers apprehended
appellant, who was driving the car, and asked if he could identify James.  According to officers, appellant said he did
not know James and that James had kidnapped him.

Appellant testified that he never
went to Cooper=s house on the day of the
robbery.  He stated James called him that
night to ask for a ride to get something to eat.  Appellant denied knowing about any plan to rob
the Sonic restaurant.  Appellant claimed
he dropped James off at the Sonic restaurant and left to return home.  After appellant drove away, James, with gun
in hand, ran out in front of appellant=s car,
jumped into the backseat, and told appellant, ANo, don=t
stop.  Go.  Go.@  Appellant said he did not stop when the
police started pursuing the car because he felt scared and nervous and James
encouraged him to continue driving. 
Appellant testified that when he was asked to identify James at the
scene, appellant told the police that he did not know James=s full
name, not that he did not know James. 
Appellant also stated he did not encourage or assist James in robbing
the Sonic restaurant.  

Appellant was charged by
indictment with aggravated robbery. 
Appellant pleaded not guilty.  A
jury found appellant guilty and assessed punishment at five years in prison and
a $3,000 fine, both of which were probated for five years.  

II.  Issue and
Analysis

In appellant=s sole
issue on appeal, he asserts the evidence is legally insufficient to support his
conviction for aggravated robbery because there was no evidence indicating that
appellant knew a deadly weapon would be used in the robbery. 








A person commits an aggravated
robbery if the person uses or exhibits a deadly weapon, and, in the course of
committing theft with the intent to obtain or maintain control of the property,
the person intentionally or knowingly threatens or places another in fear of
imminent bodily injury or death.  Tex. Pen. Code Ann. ''
29.02(a)(2), 29.03(a)(2) (Vernon 2004). 
A person is criminally responsible for an offense committed by another
if that person, acting with intent to promote or assist the commission of the
offense, solicited, encouraged, directed, aided, or attempted to aid the other
person to commit the offense.  Tex. Pen. Code Ann. '
7.02(a)(2) (Vernon 1994).  The jury found
appellant guilty as charged in the indictment, which alleged aggravated robbery
based on the use of a deadly weapon.  By
its verdict, the jury necessarily found that appellant knew a deadly weapon
would be used.  See Sarmiento v. State,
93 S.W.3d 566, 570 (Tex. App.CHouston
[14th Dist.] 2002, pet. ref=d).  On a special issue submission, the jury found
that appellant did not know a deadly weapon would be used in the commission of
the offense.  Appellant alleges the
evidence is legally insufficient to support his aggravated-robbery conviction
because a rational trier of fact could not conclude that appellant knew his
co-defendant would use or exhibit a deadly weapon during the commission of the
offense.

An affirmative finding regarding
use of a deadly weapon limits a prisoner=s
eligibility for parole.  See Tex. Code Crim. Proc. Ann. art. 42.12 '
3(g)(a)(2) (Vernon Supp. 2004); Tex.
Govt. Code '
508.145(d) (Vernon 2004); Tate v. State, 939 S.W.2d 738, 752B53 (Tex.
App.CHouston
[14th Dist.] 1997, pet. ref=d).  Section 508.145(d) provides that if the
judgment contains an affirmative finding under article 42.12, section
3(g)(a)(2) of the Texas Code of Criminal Procedure, a prisoner is not eligible
for release on parole until his actual calendar time served, without
consideration of good conduct time, equals one-half of the sentence or thirty
calendar years, whichever is less, but in no event is he eligible for release
on parole in less than two calendar years. 
See Tex. Govt. Code
'
508.145(d).  Here, an affirmative
deadly weapon finding would affect only appellant=s
eligibility for parole, not his guilt or innocence for aggravated robbery.     








When presented with seemingly
inconsistent findings regarding a deadly weapon, the appellate inquiry is
limited solely to a determination of whether the evidence is legally sufficient
to support the jury=s
verdict.  See Ward v. State, 113
S.W.3d 518, 522B23 (Tex.
App.CHouston
[1st Dist.] 2003, pet. ref=d); Chavez
v. State, 860 S.W.2d 714, 716B17 (Tex.
App.CEl Paso
1993, no pet.); Sauceda v. State, 739 S.W.2d 375, 376 (Tex. App.CCorpus
Christi 1987, pet. ref=d), citing
Dunn v. United States, 284 U.S. 390, 392B94,  52 S. Ct. 189, 190B91, 76 L.
Ed. 356 (1932).  In evaluating a legal
sufficiency challenge, we view the evidence in the light most favorable to the
verdict.  Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000). 
The verdict may not be overturned unless it is irrational or unsupported
by proof beyond a reasonable doubt.  Matson
v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  The jury, as the trier of fact, Ais the
sole judge of the credibility of the witnesses and of the strength of the
evidence.@  Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999).  The jury may
choose to believe or disbelieve any portion of the witnesses=
testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). 
If any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex.
Crim. App. 1997).

Here, the evidence is legally
sufficient to support appellant=s
conviction for aggravated robbery.  In
reviewing the sufficiency of the evidence to support appellant=s
participation as a party, we may consider events occurring before, during, and
after the commission of the offense, and we may rely on actions of the
defendant that show an understanding and common design to commit the prohibited
act.  See King v. State, 29 S.W.3d
556, 564 (Tex. Crim. App. 2000).  A
rational jury could have reached the conclusion that appellant knew of James=s intent
to commit the offense of aggravated robbery and acted with intent to aid him in
the commission of the offense.  AIn the
course of committing theft@ includes
the immediate flight after the commission of the theft.  Tex.
Pen. Code Ann. ' 29.01(1)
(Vernon 1994).  Appellant picked up
James, gun in hand, after the robbery. 
This evidence, coupled with testimony that appellant orchestrated the
entire scheme, provided the jury with an adequate basis on which to conclude
that appellant knew a deadly weapon was used in the commission of the
offense.  








Evidence of appellant driving the
get-away car and participating in the planning of the offense is legally
sufficient to show that appellant aided James in accomplishing the aggravated
robbery of the restaurant.  See
Thompson v. State, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985) (holding
evidence that defendant drove get-away car after robbery sufficient to convict
driver as a party to the offense when defendant=s conduct
before the robbery connected him to the commission of the offense); Webber
v. State, 757 S.W.2d 51, 56 (Tex. App.CHouston
[14th Dist.] 1988, pet. ref=d)
(holding that driving the get-away car is sufficient evidence to support
finding appellant guilty of aggravated robbery under the law of parties).  Appellant contends his behavior in the
aftermath of the robbery was as consistent with being surprised that James had
a gun and with wanting to abandon any further role in the offense as with his
participation in the offense.  To the
contrary, appellant led three League City police officers on a two to three
mile pursuit while fleeing the robbery scene. 
There was evidence that appellant planned the robbery earlier in the
day, and the jury reasonably could have inferred that appellant knew James used
the gun in the robbery.

Reviewing the evidence in the
light most favorable to the verdict, we conclude a rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  See McDuff, 939 S.W.2d at
614.  Having found no merit in appellant=s
challenge to the legal sufficiency of the evidence, we overrule appellant=s sole
issue on appeal and affirm the trial court=s
judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment
rendered and Memorandum Opinion filed November 24, 2004.

Panel
consists of Chief Justice Hedges and Justices Frost and Guzman.

Do Not
Publish C Tex. R. App. P. 47.2(b).