**Toney ROGERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–93–00409–CR.**

Court of Appeals of Texas, El Paso.

July 27, 1995.

Kyle Davis, Bryan, for appellant.

Charles J. Sebesta, Jr., Dist. Atty., Cald-well, W.W. Torrey, Asst. Dist. Atty., Bren-ham, for State.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

This is an appeal from a conviction for the offense of arson with bodily injury. Trial of the guilt/innocence phase was to a jury while the issue of punishment was tried to the court. The trial court sentenced Appellant to sixty years' incarceration in the Texas Department of Criminal Justice, Institutional Division with an affirmative finding of a deadly weapon. We affirm.

## EVIDENTIARY SUFFICIENCY

### 1. Standard of Review

In his first point of error, Appellant alleges that the evidence at trial was insufficient to support his conviction. In passing on the sufficiency of the evidence, we determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318, 319, 61 L.Ed.2d 560, 99 S.Ct. 2781, 2788–89 (1979); *Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App.1991). We do not resolve conflicts of fact or assign credibility to witnesses, as it was the function of the trier of fact to accept or reject any, part, or all of any witness's testimony. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex. Crim.App.1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Our duty, rather, is to determine only if the explicit and implicit findings of the trier of fact are rational by viewing all the evidence in a light most favorable to the verdict. *Adelman,* 828 S.W.2d at 421–22. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson,* 819 S.W.2d at 843 *quoting Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

### 2. Summary of the Evidence

The jury found Appellant guilty of arson with bodily injury. The indictment read, in pertinent part:

[O]n or about the 16th day of September, A.D.1992, ... did then and there with intent to damage and/or destroy a habitation ... intentionally and knowingly start a fire to, and/or cause an explosion in, said habitation by pouring a flammable and/or com-

bustible liquid in and/or around the habitation and igniting it, and . . . was reckless about whether the burning and/or explosion would endanger the life of some individual and the safety of the property of another, by igniting the flammable and/or combustible liquid while Georgia Hudgen was in that habitation, and the said Georgia Hudgen suffered bodily injury as a result of said fire and/or explosion.

The victim, Georgia Hudgen ("Hudgen"), testified that on the evening of September 16, 1992, she and Appellant had a violent argument at Hudgen's home. Appellant hit Hudgen, knocking her out. When she regained consciousness, she was on the floor of the front room of the house, and both the house and Hudgen were on fire. She ran into the front yard and put out the fire on herself by rolling in some bushes and tree limbs. As Hudgen ran toward a neighbor's home to seek help, she encountered Appellant as he drove away from the fire. Appellant pushed Hudgen into the backseat of the car and drove her to his sister's home. Appellant's sister called an ambulance for Hudgen.

The only other witnesses at Hudgen's home on the night of the fire were six small children, all under the age of nine. The two oldest children, Jennifer Nicole Patterson ("Jennifer") and Latonia Rene Wilson ("Latonia"), testified at trial. Jennifer was eight years old at the time of the fire and nine years old at the time of trial. She testified that Hudgen and Appellant had an argument on the night of the fire. Jennifer recalled that Appellant told the children to get out of the house because he was going to "cook something." From the front porch, Jennifer saw Appellant take a Clorox bottle out of the trunk of Hudgen's car, which he had driven that day. Jennifer knew that there was gasoline in the Clorox bottle. She saw Appellant take the Clorox bottle to the back of the house. Jennifer testified that the fire started from the back of the house where Appellant had taken the bottle. After the fire started, Jennifer and the other children ran to the home of a neighbor, Lymous Guyton. Jennifer told Guyton that Appellant had set the house on fire. Guyton confirmed that on the night of the fire, Jennifer told him that Appellant was burning down the house.

During a break, the prosecution refreshed Jennifer's memory with a statement she had given shortly after the fire. After parts of her statement were read to her, Jennifer recalled that Appellant had poured gasoline out of the Clorox bottle onto the floors of the house. She also recalled seeing Appellant strike some matches before he went to the back of the house.

Latonia, who was six years old at the time of the fire and seven at the time of trial, also testified that Appellant was arguing with Hudgen on the night of the fire. When Appellant told the children to leave the house, Latonia went to the fence by the road. Latonia testified that although it was dark, she saw Appellant take a Clorox bottle and some matches from the trunk of the car. Latonia saw Appellant go back behind the house with the Clorox bottle and the matches before the fire started.

Allan Finke, a certified arson investigator with the City of Brenham Fire Department, investigated this fire. He testified that in his opinion, the fire was the result of arson. Finke stated that he found evidence of "flammable or combustible liquid pour patterns" on the floor of Hudgen's home which, in this case, were probably caused by pouring a flammable liquid on the floor and igniting it. Hudgen testified that she smelled gasoline on her clothing after the fire started. Ann Rabun, the emergency room nurse who first treated Hudgen, smelled the odor of gasoline on Hudgen when she came to the emergency room.

The evidence showed that Hudgen was severely injured in the fire, sustaining second and third degree burns over 70 to 80 percent of her body. She suffered permanent scarring on her upper body, arms, neck, and face as the direct result of the fire, and she lost the portion of her left leg below the knee due to complications from her burns. She was hospitalized at the Brook Army Medical Burn Center in San Antonio for almost seven months.

### 3. Conclusion

The evidence in this record is more than adequate to support the jury's finding that

Appellant knowingly started a fire at Georgia Hudgen's habitation by pouring a combustible or flammable liquid about the home and igniting it. The record also is sufficient to support the jury's finding that Appellant recklessly endangered the life and safety of Georgia Hudgen resulting in serious bodily injury to Hudgen. We overrule Point of Error No. One.

## NOTICE OF INTENT TO SEEK FINDING OF DEADLY WEAPON

■ In his second point of error, Appellant alleges that the State gave insufficient notice of its intent to seek a finding of use of a deadly weapon. Punishment was tried to the court pursuant to Appellant's election. The State requested a finding from the trial court that Appellant had used a deadly weapon, specifically gasoline, in the commission of the offense. The trial court found that the gasoline constituted a deadly weapon pursuant to the manner of Appellant's use of it. While gasoline is not a deadly weapon per se, it has been held to be so in the manner of its use. *See Rice v. State,* 771 S.W.2d 599, 600 (Tex.App.—Houston [14th Dist.] 1989, no pet.).

The trial court's affirmative finding, reflected in the judgment of conviction, subjects Appellant to Article 42.18, Section 8(b)(3) of the Code of Criminal Procedure. Under that provision, Appellant "is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-half of the maximum sentence...." TEX.CODE CRIM. PROC.ANN. art. 42.18, § 8(b)(3) (Vernon Supp. 1995). Thus, both due process and due course of law require that notice be given that the State intends to obtain an affirmative finding of use of a deadly weapon. *Ex parte Patterson,* 740 S.W.2d 766, 767 (Tex. Crim.App.1987). For the following reasons, we find the indictment in this case gave sufficient notice to Appellant that the State intended to obtain a finding of use of a deadly weapon.

### 1. Contents of the Indictment

In this case, count one of the indictment alleged that Appellant's use of the gasoline to start a fire endangered the life of, and caused serious bodily injury to, Hudgen. Count two alleged that Appellant attempted "to cause the death of ... Georgia Hudgen, by causing a fire by pouring a flammable and/or combustible liquid in and/or around a habitation occupied by ... Georgia Hudgen and/or upon her body...." Although the record reflects that the State elected to abandon count two before the case was submitted to the jury, the trial of the case began and proceeded with count two in the indictment.

### 2. Inclusion of Count Two in the Indictment Constitutes Sufficient Notice

Appellant contends that by abandoning count two involving attempted murder, the State abandoned its intention to seek a deadly weapon finding with regard to the arson offense. This argument carries the implied assumption that count two originally provided adequate notice, but that notice was vitiated. Appellant urges that because the sole remaining count of the indictment merely alleges the act of arson, a crime against property, it fails to provide notice of an attempt to seek an affirmative deadly weapon finding. We disagree.

■ Notice provided in a count which is subsequently abandoned or dismissed by the State may nevertheless be deemed sufficient where the theories of prosecution contained in the counts are substantially interrelated. In *Grettenberg v. State,* 790 S.W.2d 613 (Tex. Crim.App.1990), Grettenberg was charged in a single indictment. Count one alleged burglary with the intent to commit aggravated assault while count two charged Grettenberg with attempted capital murder. Only the second count specifically alleged the use of a deadly weapon, but the State ultimately abandoned that count. The Court of Criminal Appeals determined that the dismissed portion of the indictment satisfied the notice requirements enunciated in *Ex parte Beck,* 769 S.W.2d 525 (Tex.Crim.App.1989) and that the election by the State to pursue one of the counts in preference to the other did not vitiate the notice given in the indictment in its original form. *Grettenberg* was expanded in *Ex parte Brooks v. State,* 847 S.W.2d 247

(Tex.Crim.App.1993). There, Brooks was charged in two separate indictments with burglary of a habitation and aggravated sexual assault, but only the aggravated sexual assault indictment specifically alleged the use of a deadly weapon. Following a plea agreement, the State dismissed the aggravated sexual assault indictment and Brooks pled guilty to burglary of a habitation. Brooks urged on appeal that because the burglary indictment failed to allege the use of a deadly weapon, he was not given proper notice that the State would seek an affirmative finding of a deadly weapon. The Court concluded that the State's agreement not to prosecute the aggravated sexual assault indictment did not vitiate notice that the State intended to show use of a deadly weapon during the criminal episode. *See also Rodriguez v. State*, 857 S.W.2d 102 (Tex.App.—Corpus Christi 1993, no pet.).

Appellant here was charged with separate counts in one indictment arising from one criminal episode. We conclude that the necessary theories of prosecution were so interrelated that the State's abandonment of the second count (attempted murder) did not vitiate the notice given in the indictment in its original form.

### 3. Count One Constitutes Sufficient Notice

■ Although we have concluded that the inclusion of count two in the original indictment constitutes sufficient notice, we have further determined that count one standing alone satisfies the notice requirement. In *Ex parte Beck*, 769 S.W.2d 525 (Tex.Crim. App.1989), the Court of Criminal Appeals held that where the indictment comports with the statutory definition of "deadly weapon," it gives sufficient notice to the defendant of the State's intention to pursue a deadly weapon finding. *Id.* at 527–28. Section 1.07(a)(17)(B) of the Texas Penal Code defines as a deadly weapon "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX.PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon 1994). In *Beck*, the indictment alleged that the appellant caused the death of the victim by shooting him with a gun. The Court of Criminal Appeals reasoned that "[i]t is apparent that any allegation which avers a death *was caused* by a named weapon or instrument *necessarily includes* an allegation that the named weapon or instrument was, 'in the manner of its use ... capable of causing' ... death." [Emphasis in original.] *Ex parte Beck*, 769 S.W.2d at 526. It is apparent from the allegations in the indictment in this case, as it was apparent in *Beck*, that the State intended to prove that the gasoline was "in the manner of its use ... capable of causing death or serious bodily injury." TEX.PENAL CODE ANN. § 1.07(a)(17)(B). The indictment gave Appellant sufficient notice that the State would attempt to prove that the gasoline was used in a manner that caused bodily injury and was capable of causing death. Because Appellant was clearly given notice that the nature of the flammable liquid alleged in the indictment was an issue necessary to litigate in his trial, he was given sufficient notice that the same fact would potentially be used to support a finding of use of a deadly weapon. *See Ex parte Beck*, 769 S.W.2d at 528. We overrule Point of Error No. Two.

### CONCLUSION

Having overruled both of Appellant's points of error, we affirm the judgment of the trial court.