ACCEPTED
03-15-00209-CR
6143519
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/20/2015 4:25:06 PM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00209-CR

_____

**IN THE
COURT OF APPEALS FOR THE
THIRD JUDICIAL DISTRICT OF TEXAS
AT AUSTIN**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/20/2015 4:25:06 PM
JEFFREY D. KYLE
Clerk

_____

**DEANDRE DWIGHT JOSEPH**

**V.**

**THE STATE OF TEXAS**

_____

**Appealed from the District Court
of Travis County, Texas
403rd Judicial District
Cause Number D-1-DC-15-904009**

_____

**BRIEF FOR APPELLANT**

_____

**Randy Schaffer
State Bar No. 17724500**

**1301 McKinney, Suite 3100
Houston, Texas 77010
(713) 951-9555
(713)951-9854 (facsimile)
noguilt@swbell.net**

**Attorney for Appellant
DEANDRE DWIGHT JOSEPH**

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES

Appellant:              DeAndre Dwight Joseph
Inmate No. 1989213
Byrd Unit
21 FM 247
Huntsville, Texas 77320

Trial Counsel:          Raymond Espersen
404 W. 13th Street
Austin, Texas 78701

Appellate Counsel:    Randy Schaffer
1301 McKinney, Suite 3100
Houston, Texas 77010

Trial Prosecutors:     Maria DeFord
Joe Frederick
509 W. 11th Street., Suite 200
Austin, Texas 78701

Appellate Prosecutor:  Rosemary Lehmberg
509 W. 11th Street
Austin, Texas 78701

Trial Judge:           Brenda Kennedy
403rd District Court
509 W. 11th Street
Austin, Texas 78701

# SUBJECT INDEX

                                                                    **Page**

STATEMENT OF THE CASE ................................................................... 1

STATEMENT REGARDING ORAL ARGUMENT ..................................... 1

ISSUES PRESENTED............................................................................. 2

STATEMENT OF FACTS ........................................................................ 2

SUMMARY OF THE ARGUMENT .............................................................. 7

ISSUE ONE ....................................................................................... 8

      THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION FOR AGGRAVATED ASSAULT BECAUSE HE DID NOT USE OR EXHIBIT A DEADLY WEAPON BY WETTING THE COMPLAINANT WITH GASOLINE.

      STATEMENT OF FACTS ................................................................... 8

      ARGUMENT AND AUTHORITIES ...................................................... 9

      A. The Standard Of Review ................................................................ 9

      B. Gasoline Is Not A "Weapon" ............................................................ 9

      C. Even If Gasoline Can Be A Deadly Weapon, Appellant Did Not Use Or Exhibit It As A Deadly Weapon .................................... 11

ISSUE TWO ...................................................................................... 13

      THE TRIAL COURT REVERSIBLY ERRED IN REFUSING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF ASSAULT.

      STATEMENT OF FACTS ................................................................... 13

ARGUMENT AND AUTHORITIES ...................................................... 13

ISSUE THREE .................................................................................... 17

THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION FOR ATTEMPTED ARSON OF A HABITATION BECAUSE HE DID NOT HAVE THE SPECIFIC INTENT TO SET FIRE TO THE HABITATION.

STATEMENT OF FACTS .................................................................. 17

ARGUMENT AND AUTHORITIES ...................................................... 18

ISSUE FOUR ...................................................................................... 19

THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION FOR ATTEMPTED ARSON OF A HABITATION BECAUSE THERE IS A MATERIAL VARIANCE BETWEEN THE INDICTMENT ALLEGATION THAT HE WETTED THE COMPLAINANT WITH GASOLINE AND CONTACTED HER CLOTHING WITH A LIT CIGARETTE AND THE TESTIMONY THAT HE ATTEMPTED TO CONTACT HER WITH A LIT CIGARETTE.

STATEMENT OF FACTS .................................................................. 20

ARGUMENT AND AUTHORITIES ...................................................... 20

CONCLUSION .................................................................................... 21

CERTIFICATE OF SERVICE ............................................................. 22

CERTIFICATE OF COMPLIANCE .................................................... 22

# INDEX OF AUTHORITIES

**Cases**            **Page**

Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1984) ............................... 16

Arline v. State, 721 S.W.2d 348 (Tex. Crim. App. 1986).................................... 16

Blanson v. State, 107 S.W.3d 103 (Tex. App.—Texarkana 2003, no pet.).......... 16

Bowen v. State, 374 S.W.3d 427 (Tex. Crim. App. 2012) .................................. 12

Byrd v. State, 336 S.W.3d 242 (Tex. Crim. App. 2011)...................................... 9

Cates v. State, 102 S.W.3d 735 (Tex. Crim. App. 2003)................................. 11-12

Chavez v. State, 740 S.W.2d 21 (Tex. App.—El Paso 1987, no pet.)................. 14, 15

Doty v. State, 585 S.W.2d 726 (Tex. Crim. App. 1979)..................................... 20-21

Eldred v. State, 578 S.W.2d 721 (Tex. Crim. App. 1979) .................................. 14

Ellis v. State, 2004 WL 177851 (Tex. App.—Fort Worth 2004, pet. ref'd) ........ 11

Gollihar v. State, 46 S.W.3d 243 (Tex. Crim. App. 2001) ................................. 20

Hernandez v. State, 903 S.W.2d 109 (Tex. App.—Fort Worth 1995, pet. ref'd) . 21

Jackson v. Virginia, 443 U.S. 307 (1979) ........................................................ 9

Johnston v. State, 115 S.W.3d 761 (Tex. App.—Austin 2003), aff'd on other grounds, 145 S.W.3d 215 (Tex. Crim. App. 2004)...................................................................... 11

Kingsbury v. State, 14 S.W.3d 405 (Tex. App.—Waco 2000, no pet.) .............. 11

Louis v. State, 393 S.W.3d 246 (Tex. Crim. App. 2012)..................................... 18

Magee v. State, 994 S.W.2d 878 (Tex. App.—Waco 1999, pet. dism'd) ............ 11

**Page**

Nash v. State, 115 S.W.3d 136 (Tex. App.—Texarkana 2013, no pet.)............... 15, 16

Rice v. State, 771 S.W.2d 599 (Tex. App.—Houston [1st Dist.] 1989, no pet.).. 11

Rogers v. State, 908 S.W.2d 239 (Tex. App.—El Paso 1995, no pet.) ............... 11

Sweed v. State, 351 S.W.3d 63 (Tex. Crim. App. 2011) ..................................... 13, 14

Williams v. State, 314 S.W.3d 45 (Tex. App.—Tyler 2010, pet. ref'd).............. 16

Windham v. State, 638 S.W.2d 486 (Tex. Crim. App. 1982)............................. 21

## Statutory Provisions

TEX. CODE CRIM. PROC. art. 36.19 (West 2014) .................................................. 15

TEX. CODE CRIM. PROC. art. 37.09(1) (West 2014)............................................... 13

TEX. GOV'T CODE §508.145(d)(1) (Vernon 2012)................................................ 17

TEX. PENAL CODE §1.07(a)(17)(B) (West 2014).................................................. 9

TEX. PENAL CODE §12.23 (West 2014) ................................................................ 16

TEX. PENAL CODE §15.01(a) (West 2014).............................................................. 18

TEX. PENAL CODE §22.01(a)(2) (West 2014)....................................................9, 12, 14

TEX. PENAL CODE §22.01(c) (West 2014)............................................................. 12,14

TEX. PENAL CODE §22.02(a)(2) (West 2014)....................................................... 9, 14

TEX. PENAL CODE §28.02(a)(2) (West 2014)....................................................... 18

## **Miscellaneous**            **Page**

www.merriam-webster.com/dictionary/accelerant ................................................. 10

www.merriam-webster.com/dictionary/fire .......................................................... 10

www.merriam-webster.com/dictionary/gasoline ................................................... 10

www.merriam-webster.com/dictionary/weapon .................................................... 10

## STATEMENT OF THE CASE

Appellant pled not guilty to aggravated assault and attempted arson of a habitation (habitual offender) in the 403rd District Court of Travis County before the Honorable Brenda Kennedy. The jury convicted him on both counts and, after he pled true to the enhancement paragraphs, assessed his punishment at 54 years in prison and a $10,000 fine for aggravated assault and 25 years in prison for attempted arson of a habitation. The trial court entered an affirmative finding of a deadly weapon in the aggravated assault judgment. Ray Espersen of Austin represented him.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument because the issues are important and his predicament is serious. The State offered to dismiss the aggravated assault if he would plead guilty and accept non-aggravated sentences of eight years for attempted arson of a habitation and six months for unauthorized use of a motor vehicle (2 R.R. 5-6). Had he done so, he would have become eligible for parole after serving about one year. He rejected the plea bargain (2 R.R. 6). He was convicted; sentenced to 54 years for aggravated assault; and, as a result of the deadly weapon finding, must serve 27 years before he becomes eligible for parole. He did not commit the offenses charged and requests the opportunity to present argument to convince this court.

1

## ISSUES PRESENTED

1. Whether the evidence is legally insufficient to sustain appellant's conviction for aggravated assault because he did not use or exhibit a deadly weapon by wetting the complainant with gasoline.

2. Whether the trial court reversibly erred in refusing to instruct the jury on the lesser included offense of assault.

3. Whether the evidence is legally insufficient to sustain appellant's conviction for attempted arson of a habitation because he did not have the specific intent to set fire to the habitation.

4. Whether the evidence is legally insufficient to sustain appellant's conviction for attempted arson of a habitation because there is a material variance between the indictment allegation that he wetted the complainant with gasoline and contacted her clothing with a lit cigarette and the testimony that he attempted to contact her with a lit cigarette.

## STATEMENT OF FACTS

### A.    The Indictment

Count one alleged that, on or about July 26, 2014, appellant did "intentionally or knowingly threaten Jillian Higgins, with imminent bodily injury by brandishing a bottle containing gasoline at Jillian Higgins and by wetting the clothing and person of Jillian Higgins with gasoline and . . . did then and there use or exhibit a deadly weapon, to-wit: gasoline, during the commission of said offense" (C.R. 27).

2

Count two alleged that appellant, "with specific intent to commit the offense of Arson of a Habitation, do an act, to-wit: wetting the clothing and person of Jillian Higgins with gasoline and contacting the clothing of Jillian Higgins with a lit cigarette while the said Jillian Higgins was inside a habitation, which amounted to more than mere preparation that tended but failed to effect to [sic] commission of the offense intended" (C.R. 28).

## B.   The State's Case

Appellant lived in a homeless shelter in Austin where Rosalie Miller worked (7 R.R. 111). They began to date during the Christmas holidays in 2013, and he moved into her room at a house that she shared with four roommates (7 R.R. 22-23, 112).[1] When Miller ended the relationship in July of 2014, appellant became upset and called her frequently to beg her to reconsider (7 R.R. 112-13). His tone during these telephone calls ranged from desperate to threatening (7 R.R. 113-14).

Appellant called Miller on July 26, 2014, and said that he was "going to go after" her family and friends (7 R.R. 115). He sent her text messages that she was "pissing [him] off" and was "playing dangerous games," and that he was "going to play with the ones you have heart for" (7 R.R. 118, 120).

Mike Walton, Miller's next-door neighbor, saw appellant arrive at her residence about 5:00 p.m. on July 26 (7 R.R. 102-103). Appellant, who was

_____

[1] Miller acknowledged that residents of homeless shelters often have emotional and psychological problems and that she violated the rules of the shelter by dating appellant (7 R.R. 122).

agitated and talking fast, said that he was looking for Miller, had "never loved like that before," and there would be "bloodshed tonight" (7 R.R. 104-06, 108).

Appellant helped Jillian Higgins, another roommate, dig a hole in the yard to bury her pet rat (7 R.R. 22, 24-25). He followed her into her room, shut the door, and stood between her and the door (7 R.R. 26). She asked him to leave. He said that he would not leave and wanted her to help him contact Miller. He was smoking a cigarette and had a 32-ounce water bottle that he said was full of gasoline (7 R.R. 26-27, 64). They stayed in her room with the lights off for two hours (7 R.R. 27).[2]

Rhett Radon, another roommate, entered the house, smelled the odor of gasoline, and noticed that someone had turned off the light in Higgins' room (7 R.R. 84-85). Radon knocked on her door (7 R.R. 86). Higgins opened it after a delay and was visibly upset (7 R.R. 87). Radon asked if everything was okay because it smelled like gasoline (7 R.R. 27). Higgins said that it was but rolled her eyes and "mouthed" to call the police (7 R.R. 89). Radon saw a silhouette in the room and assumed that appellant was there. Radon went outside, called 911, and said that her roommate was being held hostage (7 R.R. 90).

Appellant asked Higgins if she had made a signal to Radon (7 R.R. 27). She said yes. He turned on the lights and said, "You fucked up." He removed a

---

[2] Appellant smoked continuously and put out his cigarettes in a cup, in the cat's food dish, and on the floor (7 R.R. 31, 52-53).

4

tapestry from the wall and may have poured gasoline on it but did not try to ignite it (7 R.R. 27, 63-64). He threw her on the bed and poured gasoline on her and her clothing (7 R.R. 27). He tried to touch her with a lit cigarette, but she was not sure that he did (7 R.R. 27, 34, 73).[3] He said that he wanted to use her as a pawn to get to Miller (7 R.R. 30). She kicked him, ran outside, and screamed for help (7 R.R. 27-28). He pulled her back into her room, went to the living room, and returned with a gas can. As he unscrewed the top, she exited through the bedroom window and asked a neighbor to call the police (7 R.R. 28, 33). Although she felt threatened and was afraid that he would hurt her, she was not injured, and he did not set a fire (7 R.R. 28, 42, 60, 66).[4]

Austin Police Department (APD) patrolman Jared Carruth arrived and observed that Higgins was distraught and smelled of gasoline (7 R.R. 127-28). He did not smell smoke or fire, and nothing had been burned (7 R.R. 131-33).

APD arson investigator Joseph Loughran arrived and saw a can half full of gasoline and a plastic water bottle containing a liquid (7 R.R. 147-49).[5] Gasoline can be a deadly weapon when it is ignited and someone is injured or killed (7 R.R.

---

[3] Higgins testified, "He had a lit cigarette in his hand that he was trying to touch to my body" (7 R.R. 27). "He was kind of like jabbing at me with his lit cigarette sort of near my feet and legs" (7 R.R. 34).

[4] Higgins acknowledged that appellant could have used a lighter on the bedroom floor to set a fire had he wanted to do so (7 R.R. 59-60).

[5] A toxicologist testified that the liquid was gasoline (7 R.R. 222).

5

164-65). However, gasoline does not ignite by itself and requires an ignition source (7 R.R. 177-78). It is not very likely that a cigarette butt can ignite gasoline (7 R.R. 165). Appellant could have set a fire in the two hours that he was in the house had he wanted to do so (7 R.R. 176). The scene was consistent with appellant intending to scare Higgins rather than set a fire (7 R.R. 189).[6]

## C.   The Arguments

The prosecutors argued that appellant was guilty of aggravated assault because he threatened Higgins with imminent bodily injury by pouring gasoline on her and trying to touch her with a lit cigarette (8 R.R. 21-22, 35-36).[7] He was guilty of attempted arson of a habitation because he demonstrated his intent to burn down the house by pouring gasoline on Higgins and the tapestry (8 R.R. 24).

Defense counsel argued that appellant was not guilty of aggravated assault because unignited gasoline is not a deadly weapon (8 R.R. 26, 33). He was not guilty of attempted arson of a habitation because he intended to scare and manipulate Higgins to contact Miller rather than to set fire to the house (8 R.R. 27-28, 30-33).

---

[6] Loughran believed that appellant intended to set fire to Higgins rather than the tapestry or the house (7 R.R. 179).

[7] One prosecutor initially argued that the deadly weapon was the water bottle but subsequently argued that it was the gasoline (8 R.R. 20, 22).

6

# SUMMARY OF THE ARGUMENT

The evidence is legally insufficient to sustain appellant's conviction for aggravated assault because he did not use or exhibit a deadly weapon by wetting Jillian Higgins with gasoline. Gasoline is an accelerant, not a weapon. Unignited gasoline poured on a person is not capable of causing death or serious bodily injury. The trial court refused to instruct the jury on misdemeanor assault. A properly instructed jury rationally could have convicted him of assault had it believed that he threatened her with imminent bodily injury but had a reasonable doubt that he used or exhibited gasoline as a deadly weapon. This court must reform the judgment to a conviction for Class C misdemeanor assault and remand for a new trial on punishment or, in the alternative, reverse the conviction and remand for a new trial at which the jury can consider the lesser included offense.

The evidence is legally insufficient to sustain appellant's conviction for attempted arson of a habitation because he did not have the specific intent to set fire to the habitation. He easily could have set a fire in the two hours that he was in the house had he wanted to do so. The evidence demonstrated that he intended to scare Higgins rather than set a fire. Furthermore, the evidence is legally insufficient to sustain the conviction because there is a material variance between the indictment allegation that he wetted Higgins with gasoline and contacted her

7

clothing with a lit cigarette and the testimony that he attempted to contact her with a lit cigarette. This court must acquit him of attempted arson.

### ISSUE ONE

**THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION FOR AGGRAVATED ASSAULT BECAUSE HE DID NOT USE OR EXHIBIT A DEADLY WEAPON BY WETTING THE COMPLAINANT WITH GASOLINE.**

### STATEMENT OF FACTS

The aggravated assault count alleged that appellant threatened Higgins with imminent bodily injury by wetting her person and clothing with gasoline, a deadly weapon (C.R. 27). The evidence demonstrated that he poured gasoline on her and her clothing and tried to touch her with a lit cigarette in an effort to cause her to help him contact Miller (7 R.R. 26-27). She felt threatened and afraid that he would hurt her; but she was not injured, and he did not set a fire (7 R.R. 28, 42, 60, 66).

An arson investigator testified that gasoline can be a deadly weapon when it is ignited and someone is injured or killed (7 R.R. 164-65). However, gasoline does not ignite itself and requires an ignition source (7 R.R. 177-78). It is unlikely that a cigarette butt can ignite gasoline (7 R.R. 165).

8

Appellant unsuccessfully moved for a directed verdict on the basis that the State did not prove beyond a reasonable doubt that unignited gasoline is a deadly weapon (7 R.R. 235-38).

## ARGUMENT AND AUTHORITIES

### A.     The Standard Of Review

A challenge to the legal sufficiency of the evidence requires the appellate court to consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Byrd v. State, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011).

### B.     Gasoline Is Not A "Weapon."

A person commits an assault if he intentionally or knowingly threatens another with imminent bodily injury.  TEX. PENAL CODE §22.01(a)(2) (West 2014). The assault becomes aggravated if he uses or exhibits a deadly weapon.  TEX. PENAL CODE §22.02(a)(2) (West 2014).   A "deadly weapon" is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE §1.07(a)(17)(B) (West 2014).  Texas courts have concluded that gasoline is a deadly weapon without analyzing whether, in fact, it is even a weapon.

The Penal Code does not define "weapon."  Thus, the court must consider

the ordinary meaning of the word.  A "weapon" is defined as "something (such as a gun, knife, club, or bomb) that is used for fighting or attacking someone or defending yourself when someone is attacking you."  www.merriam-webster.com/dictionary/weapon.  "Gasoline" is defined as a "volatile flammable liquid hydrocarbon mixture used as a fuel especially for internal combustion engines and usually blended from several products of natural gas and petroleum."  www.merriam-webster.com/dictionary/gasoline.  "Accelerant" is defined as "a substance used to accelerate a process (as the spreading of a fire)."  www.merriam-webster.com/dictionary/accelerant.  "Fire" is defined as "the phenomenon of combustion manifested in light, flame, and heat."  www.merriam-webster.com/dictionary/fire.

Where the actor pours gasoline on the complainant and ignites it with an object (lighter, match, or cigarette), the object is the weapon, the gasoline is the accelerant, and the fire is the product.  By analogy, where the actor strikes the complainant with a motor vehicle, the vehicle is the weapon, not the gasoline that propels the vehicle.  Similarly, the gun and the bow are weapons, not the bullet and the arrow.

Appellant poured gasoline on Higgins.  Unignited gasoline poured on a person is not capable of causing death or seriously bodily injury.  Thus, the gasoline was not a "weapon" under the ordinary meaning of the word.

**C.  Even If Gasoline Can Be A Deadly Weapon, Appellant Did Not Use Or Exhibit It As A Deadly Weapon.**

Texas courts have held that gasoline is not a deadly weapon *per se* but can be in the manner of its use or intended use.  See Rogers v. State, 908 S.W.2d 239, 242 (Tex. App.—El Paso 1995, no pet.).  It  is a deadly weapon where the defendant used it to set the complainant on fire, resulting in death,  Rice v. State, 771 S.W.2d 599, 601 (Tex. App.—Houston [14th Dist.] 1989, no pet.); Magee v. State, 994 S.W.2d 878, 890 (Tex. App.—Waco 1999, pet. dism'd); sprayed it into the complainant's face and tried to ignite it with a lighter, Kingsbury v. State, 14 S.W.3d 405, 408-09 (Tex. App.—Waco 2000, no pet.); and threw it on the complainant and threatened to set her on fire with a lighter.  Ellis v. State, 2004 WL 177851*3 (Tex. App.—Fort Worth 2004, pet. ref'd) (not designated for publication).

An object that can be a deadly weapon under some circumstances is not necessarily a deadly weapon under all circumstances.  An object must have more than "a hypothetical capability of causing death or serious bodily injury," and a deadly weapon finding must be supported by "evidence relating directly to the circumstances of the criminal episode."  Johnston v. State, 115 S.W.3d 761, 764 (Tex. App.—Austin 2003), aff'd on other grounds, 145 S.W.3d 215 (Tex. Crim. App. 2004) (lit cigarette not deadly weapon in manner of its use or intended use where defendant burned child on palm of hand); Cates v. State, 102 S.W.3d 735,

738-39 (Tex. Crim. App. 2003) (truck that struck and killed person not used or exhibited as deadly weapon during subsequent offense of failure to stop and render aid absent evidence that defendant drove it in deadly manner in flight from scene).

Assuming *arguendo* that gasoline can be a deadly weapon in some circumstances, it clearly was not in this case. Appellant poured gasoline on Higgins in an effort to cause her to help him contact Miller. He had ample opportunity to set a fire during the two hours that they were in her room but did not do so. The gasoline was incapable of igniting itself, and it was unlikely that a cigarette butt could ignite it. Thus, the evidence is legally insufficient to sustain appellant's conviction for aggravated assault because the gasoline was not a deadly weapon in the manner in which he used it.

The evidence is legally sufficient to sustain a conviction for the lesser included offense of Class C misdemeanor assault, as the jury could have found that appellant threatened Higgins with imminent bodily injury. See TEX. PENAL CODE §§ 22.01(a)(2) and (c) (West 2014). Where the evidence is insufficient to sustain a conviction for the offense charged, the appellate court may reform the judgment to reflect a conviction for a lesser included offense for which the evidence is legally sufficient. Bowen v. State, 374 S.W.3d 427, 432 (Tex. Crim. App. 2012). Thus, this court must reform the judgment to reflect a conviction for Class C misdemeanor assault and remand for a new trial on punishment.

**THE TRIAL COURT REVERSIBLY ERRED IN REFUSING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF ASSAULT.**

## STATEMENT OF FACTS

The pertinent facts are found on page 8 of appellant's brief. The trial court denied appellant's request for a jury instruction on the lesser included offense of assault in the aggravated assault case (7 R.R. 245-47).[8]

## ARGUMENT AND AUTHORITIES

An offense is a lesser included offense if, *inter alia*, "it is established by proof of the same or less than all the facts required to establish commission of the offense charged." TEX. CODE CRIM. PROC. art. 37.09(1) (West 2014). The defendant is entitled to an instruction on a lesser included offense if it is included within the proof necessary to establish the offense charged and there is any evidence from which a rational jury could acquit him of the offense charged and convict him of the lesser offense. Sweed v. State, 351 S.W.3d 63, 67-68 (Tex. Crim. App. 2011). More than a scintilla of evidence requires submission of a lesser included offense instruction. Id. at 68. This standard is satisfied "if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." Id. Appellate courts

---

[8] Defense counsel argued unsuccessfully to the court that the jury could doubt whether the gasoline was a deadly weapon (7 R.R. 245-47).

favor submitting lesser included offense instructions so the jury will not have the unpalatable option of convicting a defendant when it is not convinced that he committed the offense charged or acquitting him when it is convinced that he committed a lesser offense. See Eldred v. State, 578 S.W.2d 721, 723 (Tex. Crim. App. 1979).

A person commits an assault if he intentionally or knowingly threatens another with imminent bodily injury. TEX. PENAL CODE §22.01(a)(2) (West 2014). This offense usually is a Class C misdemeanor. TEX. PENAL CODE §22.02(c) (West 2014). The assault becomes aggravated if he uses or exhibits a deadly weapon. TEX. PENAL CODE §22.02(a)(2) (West 2014). Thus, assault is a lesser included offense of aggravated assault. If there is more than a scintilla of evidence that would enable the jury to find that the alleged weapon was not capable of causing death or serious bodily injury in the manner of its use or intended use, the defendant is entitled to an instruction on assault. Cf. Sweed, 351 S.W.3d at 69.

It is error to refuse to instruct the jury on a lesser included offense where there is a fact question as to whether the object used was a deadly weapon. In Chavez v. State, 740 S.W.2d 21 (Tex. App.—El Paso 1987, no pet.), the defendant held a knife to the complainant's back during a robbery. Although the evidence was legally sufficient to establish that the knife was a deadly weapon and that he committed aggravated robbery, the trial court erred in refusing to submit an

instruction on robbery, as the jury could have concluded that the knife was not used or intended to be used in a deadly manner. Id. at 23; cf. Nash v. State, 115 S.W.3d 136, 139 (Tex. App.—Texarkana 2013, no pet.) (error to refuse instruction on robbery in aggravated robbery case where there was fact question as to whether object used was deadly weapon).

Appellant poured gasoline on Higgins but did not set a fire, and she was not injured. The arson investigator testified that gasoline does not ignite itself and requires an ignition source. The jury was not compelled to find that the unignited gasoline was a deadly weapon. It rationally could have concluded that appellant threatened Higgins with imminent bodily injury but did not use or exhibit a deadly weapon. Threatening a person with imminent bodily injury without using a deadly weapon is a Class C misdemeanor assault. However, in the absence of an instruction on assault, the court's charge gave the jury no palatable option if it were not convinced that the gasoline was a deadly weapon. The evidence raised the lesser included offense of assault, and the trial court erred in refusing the instruction.

A conviction must be reversed if jury charge error "was calculated to injure the rights of the defendant, or it appears that he has not had a fair and impartial trial." TEX. CODE CRIM. PROC. art. 36.19 (West 2014). Where jury charge error is preserved for appeal, a new trial is required if the defendant suffered "any actual

15

harm, regardless of degree." Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986).

A finding of harm is "essentially automatic" where the omission of a lesser included offense instruction left the jury with the option of convicting the defendant of the offense charged or acquitting him although he clearly committed some offense. Nash, 115 S.W.3d at 139-40; Williams v. State, 314 S.W.3d 45, 53 (Tex. App.—Tyler 2010 pet. ref'd). In Blanson v. State, 107 S.W.3d 103 (Tex. App.—Texarkana 2003, no pet.), the defendant approached a store employee with a pocketknife in his hand as he attempted to leave a room where he had been detained for theft. He was charged with aggravated robbery. The trial court instructed the jury in the charge without objection that a knife is a deadly weapon. This erroneous instruction caused egregious harm because there was a fact question as to whether the knife was a deadly weapon in the manner of its use or intended use. Id. at 106. If an erroneous instruction that an object is a deadly weapon causes egregious harm, the refusal to give the jury the option of convicting the defendant of a lesser included offense if it has a reasonable doubt that the object is a deadly weapon clearly causes some harm.

Had the jury convicted appellant of Class C misdemeanor assault, the maximum sentence would have been a $500 fine. TEX. PENAL CODE §12.23 (West 2014) one year in the county jail. He was convicted of aggravated assault with a

16

deadly weapon, enhanced by prior felony convictions, and sentenced to 54 years in prison. He is not eligible for release on parole for 27 years, when his "actual calendar time served, without consideration of good conduct time, equals one-half of the sentence." TEX. GOV'T CODE §508.145(d)(1) (Vernon 2012). The harm was substantial. Accordingly, he is entitled to a new trial at which the jury can consider the lesser included offense of Class C assault.

## ISSUE THREE

**THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION FOR ATTEMPTED ARSON OF A HABITATION BECAUSE HE DID NOT HAVE THE SPECIFIC INTENT TO SET FIRE TO THE HABITATION.**

## STATEMENT OF FACTS

The attempted arson of a habitation count alleged that appellant, with the specific intent to commit the offense of arson of a habitation, wetted Higgins' person and clothing with gasoline and contacted her clothing with a lit cigarette while she was inside the habitation (C.R. 28). The evidence demonstrated that he removed a tapestry from the wall and may have poured gasoline on it but did not try to ignite it and that he poured gasoline on Higgins and her clothing and tried to touch her with a lit cigarette in an effort to cause her to help him contact Miller (7 R.R. 26-27, 63-64). He did not set a fire (7 R.R. 66).

An arson investigator testified that appellant could have set a fire in the two

17

hours that he was in the house had he wanted to do so (7 R.R. 176). The scene was consistent with appellant intending to scare Higgins rather than set a fire (7 R.R. 189).[9]

Appellant unsuccessfully moved for a directed verdict on the basis that the State did not prove beyond a reasonable doubt that he had the specific intent to commit the offense of arson of a habitation (7 R.R. 238-39).

## ARGUMENT AND AUTHORITIES

The issue is whether the jury "could have rationally determined beyond a reasonable doubt from the totality of the . . . evidence viewed in a light most favorable to its verdict" that appellant had the specific intent to set fire to the habitation. Cf. Louis v. State, 393 S.W.3d 246, 251 (Tex. Crim. App. 2012). There is no evidence that he had this specific intent.

A person commits the offense of arson of a habitation if he starts a fire or causes an explosion with the intent to destroy or damage a habitation. TEX. PENAL CODE §28.02(a)(2) (West 2014). A person commits a criminal attempt if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended. TEX. PENAL CODE §15.01(a) (West 2014). Thus, a person commits the offense of attempted arson of a habitation if he attempts to start a fire with the specific intent

---

[9] The investigator believed that appellant intended to set fire to Higgins rather than the tapestry or the house (7 R.R. 179).

18

to destroy or damage a habitation.

The evidence did not establish beyond a reasonable doubt that appellant attempted to start a fire with the specific intent to destroy or damage the house. Higgins was not sure whether he poured gasoline on the tapestry but was sure that he did not try to ignite it although he had ample opportunity to do so. He poured gasoline on her, tried to touch her with a lit cigarette, and said that he wanted to use her as a pawn to get to Miller. The arson investigator acknowledged that his intent was to scare Higgins rather than start a fire.

Appellant's conduct certainly merited punishment. However, the evidence did not establish beyond a reasonable doubt that he had the specific intent to set fire to the house. Accordingly, he is entitled to an appellate acquittal of the offense of attempted arson of a habitation.

## ISSUE FOUR

**THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION FOR ATTEMPTED ARSON OF A HABITATION BECAUSE THERE IS A MATERIAL VARIANCE BETWEEN THE INDICTMENT ALLEGATION THAT HE WETTED THE COMPLAINANT WITH GASOLINE AND CONTACTED HER CLOTHING WITH A LIT CIGARETTE AND THE TESTIMONY THAT HE ATTEMPTED TO CONTACT HER WITH A LIT CIGARETTE.**

## STATEMENT OF FACTS

The attempted arson of a habitation count alleged, in pertinent part, that appellant wetted the complainant's clothing and person with gasoline and contacted her clothing with a lit cigarette while she was inside a habitation (C.R. 28). The evidence demonstrated that he tried to touch her with a lit cigarette, but she was not sure that he did (7 R.R. 27, 34, 73). She testified, "He had a lit cigarette in his hand that he was trying to touch to my body" (7 R.R. 27). "He was kind of like jabbing at me with his lit cigarette sort of near my feet and legs" (7 R.R. 34).

## ARGUMENT AND AUTHORITIES

The indictment alleged that appellant committed the offense of attempted arson of a habitation by wetting the complainant with gasoline and contacting her clothing with a lit cigarette. The evidence established that he attempted to contact her with a lit cigarette. The evidence is legally insufficient to sustain the conviction because there is a material variance between the pleading and the proof.

A material variance between the pleading and the proof requires entry of a judgment of acquittal. Gollihar v. State, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001). Where the indictment alleges the inchoate crime of criminal attempt, the evidence is legally insufficient if the State proves that the defendant committed an act different than the act alleged. See Doty v. State, 585 S.W.2d 726, 728 (Tex.

20

Crim. App. 1979) (testimony that defendant did not pay hired killer insufficient to prove attempted capital murder indictment allegation that defendant paid him to commit murder); Windham v. State, 638 S.W.2d 486, 487-88 (Tex. Crim. App. 1982) (testimony that defendant pulled trigger and gun clicked insufficient to prove attempted murder indictment allegation that defendant shot at complainant); Hernandez v. State, 903 S.W.2d 109, 115 (Tex. App.—Fort Worth 1995, pet. ref'd) (testimony that defendant's hand touched officer's holster during struggle insufficient to prove attempt to take peace officer's firearm indictment allegation that defendant attempted to remove firearm from holster). Accordingly, appellant is entitled to an appellate acquittal for the offense of attempted arson of a habitation because of the material variance between the indictment allegation and the testimony.

## CONCLUSION

This court must reverse the aggravated assault conviction and remand for a new punishment hearing on the lesser included offense of Class C misdemeanor assault or, in the alternative, for a new trial; and it must reverse the attempted arson of a habitation conviction and enter a judgment of acquittal.

Respectfully submitted,

/s/ Randy Schaffer
Randy Schaffer
State Bar No. 17724500

1301 McKinney, Suite 3100
Houston, Texas 77010
(713) 951-9555
(713) 951-9854 (facsimile)
noguilt@swbell.net

Attorney for Appellant
DEANDRE DWIGHT JOSEPH

## CERTIFICATE OF SERVICE

I served a copy of this document on Rosemary Lehmberg, Travis County District Attorney, P.O. Box 1748, Austin, Texas, 78767, by e-filing and by United States mail, postage prepaid, on July 20, 2015.

/s/ Randy Schaffer
Randy Schaffer

## CERTIFICATE OF COMPLIANCE

The word count of the countable portions of this computer-generated document specified by Rule of Appellate Procedure 9.4(i), as shown by the representation provided by the word-processing program that was used to create the document, is 4,860 words. This document complies with the typeface requirements of Rule 9.4(e), as it is printed in a conventional 14-point typeface with footnotes in 12-point typeface.

/s/ Randy Schaffer
Randy Schaffer